RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 09a0006p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
                        *Plaintiff-Appellee,*

                                                              No. 07-5277

          *v.*

MICHAEL CHARLES GUNTER,
                        *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Tennessee at Greeneville.
No. 06-00005—J. Ronnie Greer, District Judge.

Argued: October 29, 2008

Decided and Filed: January 8, 2009

Before: BATCHELDER, CLAY, and SUTTON, Circuit Judges.

————————————

**COUNSEL**

**ARGUED:** Stephen Ross Johnson, RITCHIE, DILLARD & DAVIES, Knoxville, Tennessee, for Appellant. Nancy Stallard Harr, ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee. **ON BRIEF:** Stephen Ross Johnson, RITCHIE, DILLARD & DAVIES, Knoxville, Tennessee, for Appellant. Nancy Stallard Harr, ASSISTANT UNITED STATES ATTORNEY, Greeneville, Tennessee, for Appellee.

————————————

**OPINION**

————————————

CLAY, Circuit Judge. Michael Charles Gunter appeals his conviction of conspiracy to distribute and possession with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846, of attempt to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 18 U.S.C. § 2. On direct appeal, Gunter challenges: (1) whether there was probable cause to search his residence; (2) the sufficiency of the evidence supporting his conviction; (3) the admissibility of his prior felony

1

convictions; and (4) the propriety of jury instructions regarding the conspiracy charges. For the reasons that follow, we **AFFIRM** the judgment of the district court.

## BACKGROUND

On February 14, 2006, a federal grand jury indicted Michael Charles Gunter and co-defendants Bill Banks, Kenny Holt, and John Banks on charges of conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 843(b), and 846 (Count One), and of attempt to possess with intent to distribute 500 grams or more of cocaine in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, and 18 U.S.C. § 2 (Count Two).

On August 10, 2006, the district court denied Gunter's motion to suppress evidence seized from his residence. Gunter's co-defendants each pleaded guilty pursuant to plea agreements with the government, but Gunter proceeded to trial. On September 19, 2006, the jury convicted Gunter of conspiracy to distribute and possession with intent to distribute more than 500 grams but less than five kilograms or more of cocaine (the lesser-included offense of Count One), and of the substantive drug offense in Count Two.

On September 28, 2006, Gunter filed a motion for a new trial, which the district court denied. On February 27, 2007, Gunter was sentenced to 120 months imprisonment, and thereafter filed a timely notice of appeal.

### A. The Search Warrant

On January 20, 2006, a United States magistrate judge issued a warrant to search Gunter's residence, surrounding property, and vehicles. The application for the warrant and the supporting affidavit were prepared by Special Agent James Williams of the Tennessee Bureau of Investigation ("TBI"), who supervised a joint federal and state investigation that began in November 2005.

In the affidavit, Williams stated that he had participated in an investigation focusing on a cocaine and marijuana distribution network involving Gunter, Harold Grooms, co-defendant Bill Banks, and others. The investigation included the use of a confidential informant ("CI-1") and Williams alleged that CI-1 was an accurate and reliable source that he had used in the past. The investigation included surveillance activities and produced a

number of recorded and unrecorded conversations where CI-1 discussed the distribution of large quantities of cocaine with Grooms and Banks.

Williams' affidavit is lengthy and much of it pertains to interactions between CI-1 and Banks. However, in a Report and Recommendation recommending denial of Gunter's motion to suppress, the magistrate judge summarized the information in the affidavit as follows:

> (a) CI-1 previously had sold marijuana to Harold Grooms.
>
> (b) CI-1 represented that he had four to six pounds of cocaine which he wished to sell to Harold Grooms and Mike Gunter, and he was discussing this potential sale with Bill Banks as an intermediary. [ . . . . ]
>
> (h) Banks told CI-1 that Harold Grooms and David Lancaster, an associate of Grooms, wanted Banks to deliver the cocaine to one of several possible locations.
>
> (i) Banks told CI-1 that Grooms and Gunter were "associates in the cocaine business."
>
> (j) On December 13, 2005, Banks told CI-1 that Gunter had gone to Florida and procured one kilogram of cocaine, that Gunter also wanted to [buy] one kilogram of cocaine from Banks, and that he would buy even more if he was able to sell the kilogram he bought in Florida.
>
> (k) Banks consistently told CI-1, as late as January 13, 2006 (one week before the warrant was issued), that Gunter wanted to buy two to four kilograms of cocaine; Banks said that he would get the purchase money from Gunter and would provide samples of the cocaine to Harold Grooms for testing.
>
> (l) If the cocaine met Grooms' test for purity, Grooms would give Banks the money to buy the cocaine from CI-1; *Banks intended to buy cocaine for both Grooms and Gunter at the same time.* [ . . . . ]
>
> (o) On January 5, 2006, Banks . . . mentioned that he had sold three kilograms of cocaine to Gunter.
>
> (p) On January 16, 2006, CI-1 told Banks that CI-1's purported supplier of cocaine had to have a minimum order of eight kilograms before he would make a delivery; Banks stated that he intended to sell Gunter two kilograms of cocaine.
>
> (q) On January 19, 2006, Banks told CI-1 that Gunter had purchased a kilogram of cocaine and that Lancaster and Grooms had purchased two kilograms. Banks told CI-1 that Grooms was concerned about CI-1's competition with Grooms' cocaine business; Banks indicated that Grooms

wanted to take possession of any cocaine ultimately intended for Gunter and "re-rock" it before it was delivered to Gunter.[1]   Banks told CI-1 that Grooms believed that CI-1 was selling his cocaine too cheaply to Gunter.

(r)  During a meeting of CI-1 and Banks, Banks received a phone call; Banks said the caller was Gunter, that Gunter wanted to buy two kilograms of cocaine for $22,000.00 per kilogram.  Banks and CI-1 also discussed the advisability of talking to Harold Grooms to determine if Grooms would buy cocaine from banks and CI-1 if they agreed to sell only to Grooms and Lancaster, or if they agreed to sell to other customers after Grooms had re-rocked the cocaine.

(Joint Appendix ("J.A.") 108 -111) (emphasis in original).

The affidavit also stated that law enforcement agents conducted surveillance of a January 19, 2006 meeting between the informant and co-defendant Banks.  After the meeting, agents observed Banks meet with a white female in a minivan displaying a tag that was registered to Gunter's home address.  Agents then observed Banks travel a short distance and meet with an individual matching Gunter's physical description operating a white pick-up truck.  After Banks and this individual separated, the pick-up truck was observed traveling to Gunter's residence.  Williams stated that because it was his experience that drug traffickers kept evidence of illegal activity in their homes, he believed that the multiple items of contraband listed in the affidavit would be found at Gunter's residence.  A warrant was issued, and it was executed on January 26, 2006.

Gunter moved to suppress the evidence seized form the search of his residence. On July 7, 2006, the magistrate judge issued a Report and Recommendation recommending denial of the motion.  Gunter filed objections, but the district court adopted the magistrate's order and denied the motion to suppress.

**B.  Trial Evidence**

Gunter's case was tried before a jury in September 2006.  Both the government and Gunter presented witnesses.

---

[1] The magistrate's report indicates that "re-rocking" means removing some of the material from a kilogram of cocaine and then re-packaging it to appear as if it still contained one kilogram.

The government's first witness was Williams, who testified that he was a TBI agent with thirteen years experience conducting narcotics investigations, and that he led an investigation into the drug activities of Gunter and three co-defendants beginning in November 2005.

Williams testified that he contacted an informant, who arranged an undercover transaction for the sale of six to eight kilograms of cocaine to co-defendant Bill Banks and his associates. The informant reported that he had been involved in marijuana deals with Banks and that Banks was involved with Harold Grooms, the owner of Hilltop Auto Sales. Agents believed Grooms was responsible for distributing between 10 and 20 kilograms of cocaine per month and Grooms was considered the main target of the investigation.

In the course of the investigation, agents recorded approximately 38 conversations between the informant and Banks. Those conversations were admitted into evidence and later played for the jury. Discussing and summarizing those conversations for the jury, Williams testified that Banks consistently stated that he knew an individual who would "front" him the money to purchase the cocaine, and that the individual had offered to do so on multiple occasions. Banks later clarified that this individual was Gunter.

Williams testified that a deal was scheduled for December 10, 2005, and that Banks indicated that he would purchase two kilograms of cocaine from the informant and sell it to Gunter. Williams testified that he decided to cancel the deal because he felt the situation was unsafe. The government admitted records of cellular phone calls between Gunter and Banks during this time frame.

Williams also testified that the informant and Banks met in a restaurant on January 19, 2006 to discuss a drug deal scheduled for that day that had fallen through. Williams testified that in a recorded conversation, Banks indicated that Grooms and an associate were "backing out" because they learned that Gunter was involved, and they did not want to sell two kilograms of cocaine to Gunter, because "if Mr. Gunter was able to obtain cocaine at the purity level that they believed they would be getting, prior to

them being able to cut the cocaine or rerock the cocaine and reduce its purity level, that they felt like he would damage their business." (J.A. 890-91.)

Williams testified that after this meeting he saw Banks stop to speak to a white female in a minivan. He explained that in his search warrant affidavit, he had been mistaken when he said the minivan was registered to Gunter's home address, and that the minivan was not registered to Gunter. He then saw Banks travel in the direction of I-40.

He also testified that on January 26, 2006, the informant met with Banks, and Banks gave the informant a package containing $48,500 in cash. A portion of the cash was wrapped in duct tape, and a forensic scientist testified that fingerprints recovered from the sticky side of the tape matched Gunter's prints.

The government also presented TBI Special Agent Robert Burnett, a surveillance agent in the case. Burnett confirmed much of Williams' testimony. He testified that he observed the informant meet with Banks at a restaurant, and that Banks left the restaurant and went to speak to an unknown white female in a minivan in a parking lot next door. He then observed Banks get on the interstate and travel to a gas station where he met Gunter in a white Chevrolet truck. He stated that he was able to recognize Gunter because he had been shown pictures of him and he knew that Gunter was a target of the surveillance. Burnett and another agent took photographs as they observed Gunter and Banks speak for 10-15 minutes, and Burnett saw Gunter depart on I-40 East. While on the stand, Burnett compared surveillance photographs to photographs of the truck taken during the search of Gunter's property, and confirmed that they were the same truck.

The government also presented a surveillance video of Banks' garage on January 26, 2006, the day of the scheduled drug transaction. In the video, a truck pulled up, Gunter walked into the garage, and Banks arrived four minutes later. The government presented records of two phone calls between Banks and Gunter that morning.

Williams testified that during the search of Gunter's residence, agents found a white Chevrolet pickup truck, a PVC pipe with the ends wrapped, a manila envelope, a duct tape wrapper labeled "20K," telephone records, a green note book, tax returns, and bank records. A detective testified that "20K" represented "twenty thousand" and that PVC pipes were often used to store drugs and money.

Co-defendant Banks also testified pursuant to a cooperation agreement with the government. Banks testified that shortly after he met the informant, he contacted Gunter, who agreed to buy two kilograms of cocaine from him. He testified that one or two deals had fallen through, and in one of these deals, he collected money from Gunter and had to return it. He testified that eventually the deal went forward, and on January 25, 2006, Gunter brought him $22,000 wrapped in bundles with duct tape for two kilograms of cocaine, so that Banks could give the money to the informant. Banks also led the jury through many of the tape recorded conversations he had with the informant, where he talked about Gunter being his customer.

On September 19, 2006, the jury convicted Gunter of cocaine conspiracy and possession charges, and this appeal followed.

## DISCUSSION

### I. The Motion to Suppress

#### A.          Standard of Review

When reviewing the denial of a motion to suppress evidence, this Court reviews the district court's findings of fact for clear error and its conclusions of law *de novo*. *United States v. Foster*, 376 F.3d 577, 583 (6th Cir. 2004). A factual finding is clearly erroneous when a court, on reviewing the evidence, "is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). Whether a search and seizure was reasonable under the Fourth Amendment is a question of law. *United States v. Galloway*, 316 F.3d 624, 628 (6th Cir. 2003). Because the district court denied Gunter's motion to suppress, we

review all evidence in the light most favorable to the government. *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006).

**B.      Analysis**

In his first assignment of error, Gunter challenges the district court's denial of his motion to suppress evidence seized from his home. Gunter asserts that the affidavit in support of the search warrant was insufficient to establish probable cause because: (1) the hearsay information in the affidavit is not reliable evidence; (2) the affidavit provides no nexus of any alleged illegal activity to Gunter's residence; and (3) the lack of probable cause was not cured by the officers' good faith reliance on the warrant. His argument fails on each of these points.

**1.  The reliability of the evidence supporting the warrant**

First, Gunter argues that the information that linked Gunter to illegal activities was so unreliable that it did not support a finding of probable cause.

The Fourth Amendment of the Constitution states that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To determine whether probable cause for a search exists, a judge issuing a warrant must "make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238-239 (1983). The duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis" for concluding that probable cause existed. *Id.*

It is well established that a magistrate may rely on hearsay evidence in making his probable cause determination. *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003). When confronted with hearsay information from a confidential informant or an

anonymous tipster, the court should consider three factors in connection with the totality of the circumstances inquiry: the (1) veracity; (2) reliability; and (3) basis of knowledge of the tipster or informant. *See id.* These three factors should not be applied rigidly as a test, but should be considered in weighing all of the circumstances. *United States v. Allen*, 211 F.3d 970, 975 (6th Cir. 2000).

Here, the issuing judge had Williams' affidavit before him. Gunter argues that the affidavit is insufficient to support a finding of probable cause because: (1) it relies almost entirely on unreliable hearsay where an informant spoke to Banks about Banks' alleged conversations with Gunter; (2) it provides no evidence that the informant or law enforcement spoke with Gunter directly or observed Gunter engage in illegal activity; and (3) it provides no information about the reliability of Banks, who is the primary source of the statements that incriminated Gunter.

The government asserts that the affidavit provided probable cause of ongoing drug trafficking and emphasizes that Williams, who listened to thirty-eight recorded conversations between the informant and Banks, had years of experience in drug investigations and was able to independently assess that Banks was being truthful.

First, we note that the government's argument assigns too much weight to Williams' conclusions. The Supreme Court has held that a warrant application must provide sufficient information to allow an issuing judge to *independently* determine probable cause; his action cannot be a mere ratification of the conclusions of others. *Gates*, 462 U.S. at 239.

Here, however, the affidavit does support an independent determination of probable cause. In the affidavit, Williams indicated that the informant had provided accurate and reliable information each time he was used in the past. The informant provided detailed information about ongoing drug transactions between Grooms and Banks, which had been corroborated by independent police investigations, including surveillance of meetings and review of telephone records. Under these circumstances, the affidavit contains enough information to establish the informant's reliability. *See United States v. Weaver*, 99 F.3d 1372, 1379 (6th Cir. 1996) (information obtained from

an informant "may be bolstered if the authorities undertook probative efforts to corroborate an informant's claims through independent investigations"); *Helton*, 314 F.3d at 820 ("if the prior track record of an informant adequately substantiates his credibility, other indicia of reliability are not necessarily required.").

The issue then becomes the veracity, reliability and basis of knowledge of Banks. *See Gates*, 462 U.S. at 238-239. Banks' purported basis of knowledge was his first-hand interactions and conversations with Gunter. Banks discussed multiple conversations that he had with Gunter regarding past and potential future drug sales, which included details regarding the price and the quantity to be sold.

The informant stated that on January 5, 2006, Banks told him that he had sold three kilograms of cocaine to Gunter, and that Banks repeatedly stated that Gunter would "front" him the purchase money to buy two to four kilograms of cocaine. The affidavit also indicated that during a meeting with the informant at Banks' garage, Banks received a phone call from Gunter, in which Gunter indicated that he would buy the two kilograms of cocaine for $22,000 per kilogram.

The magistrate judge reasoned that Banks was reliable because unlike a witness presented at trial, who might have something to gain by his testimony, Banks had nothing to gain by implicating Gunter in the context of a drug deal that was surreptitiously recorded and that implicated Banks as well. This inference is reasonable. The record does not provide any indication that Banks suspected that the conversations were being recorded or that he had a motive to lie. *See Stuart v. Wilson*, 442 F.3d 506, 524 (6th Cir. 2006) (the lack of motive to fabricate statements supports a conclusion that the statements are reliable). Moreover, the affidavit indicates that after a meeting between the informant and Banks, surveillance officers observed Banks proceed directly to meet with an individual matching Gunter's description. This independent police investigation corroborates the statements of Banks and enhances his reliability. *See Weaver*, 99 F.3d at 1379.

In sum, based on all of the information provided in the affidavit, including details that corroborate the reliability of the informant and multiple recorded conversations

where Banks directly implicated Gunter, the issuing judge had a substantial basis to conclude that Gunter was engaged in ongoing drug trafficking.

### 2. The nexus between drug activity and Gunter's residence

Relying on *United States v Carpenter*, 360 F.3d 591 (6th Cir. 2004) (en banc) and *United States v. Laughton*, 409 F.3d 744 (6th Cir. 2004), Gunter also argues that the affidavit fails to establish a proper nexus between his residence and the criminal activity at issue, as required by this Court. Gunter stresses that the affidavit does not contain any facts indicating that Gunter was dealing drugs from his residence, and that the affidavit only mentions his residence in one short paragraph where Williams alleges that a surveillance agent followed a white pickup to the residence.

This argument is misguided. As discussed above, the affidavit contains evidence that Gunter was engaged in repeated purchases of cocaine in the one to four kilogram range. Because the quantity of drugs and the repeated nature of the transactions make it reasonable to conclude that Gunter was engaged in ongoing drug trafficking, it was reasonable to infer that evidence of illegal activity would be found at Gunter's residence. *See United States v. Jones*, 159 F.3d 969, 974-75 (6th Cir. 1998) (probable cause to search residence existed where defendant engaged in two recorded transactions outside of his residence because "[i]n the case of drug dealers, evidence is likely to be found where the drug dealers live").

Gunter also argues that the nexus between any alleged drug activity and his residence is substantiated by false information that should be struck from the affidavit. Under *Franks v. Delaware*, 438 U.S. 154 (1978), and *United States v. Elkins*, 300 F.3d 638, 649 (6th Cir. 2002), a reviewing court must strike from the affidavit statements made at least with recklessness as to their truth. Gunter challenged the following statements:

> Law enforcement agents, conducting surveillance in the area of [a] meeting [on January 19, 2006 between the informant and defendant Banks] observed BANKS meeting with a w/f in a mini-van displaying a

> TN autodealer's tag that was registered to GUNTER's home address . . . .
> After meeting with the w/f, agents observed BANKS travel a short
> distance down the road, where he met with an individual matching MIKE
> GUNTER's physical description operating a white pick-up truck. After
> BANKS and this individual separated, the white pick-up truck was
> observed traveling to GUNTER's residence at the above location.

(J.A. 86.) Gunter argues that this statement is false because, at trial, Williams testified
that the minivan's tag was not registered to Gunter, and a surveillance officer testified
that the white truck headed *toward* Gunter's residence.

It is debatable whether these statements rise to the level of recklessness, but we
need not reach that issue. The nexus to Gunter's residence in no way depended on a
finding that the minivan or the truck were linked to Gunter's home. As discussed above,
a sufficient nexus was provided by the inference that evidence of drug trafficking would
be found at the residence of one who is engaged in ongoing drug trafficking.

Based on the totality of the circumstances, we conclude that the issuing
magistrate had a substantial basis to conclude that there was probable cause that
evidence of criminal activity would be found in Gunter's residence. Based on this
conclusion, it is not necessary to address the applicability of the "good faith" exception
articulated in *United States v. Leon,* 468 U.S. 897 (1984). *See United States v. Miller*,
314 F.3d 265, 271 (6th Cir. 2002) (good faith exception not applicable when court finds
warrant was based on probable cause). We therefore find that the district court did not
err in denying Gunter's motion to suppress.

**II. The Sufficiency of the Evidence**

**A.       Standard of Review**

This Court reviews *de novo* the sufficiency of the evidence to sustain a
conviction. *United States v. Gibson*, 896 F.2d 206, 209 (6th Cir. 1990). Evidence is
sufficient to sustain a conviction if "after viewing the evidence in the light most
favorable to the prosecution, and after giving the government the benefit of all inferences
that could reasonably be drawn from the testimony, any rational trier of fact could find

the elements of the crime beyond a reasonable doubt." *United States v. M/G Transp. Servs., Inc.*, 173 F.3d 584, 589 (6th Cir. 1999) (citing *Jackson v. Virginia,* 443 U.S. 307, 319 (1979)). In examining claims of insufficient evidence, this Court does not "weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id.* at 588-89.

### B.     Analysis

Gunter argues that there was insufficient evidence to support his conviction for cocaine conspiracy. To sustain a conviction for drug conspiracy, the government must prove beyond a reasonable doubt: (1) an agreement to violate drug laws; (2) knowledge of and intent to join the conspiracy; and (3) participation in the conspiracy. *United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999). These elements may be shown by either direct or circumstantial evidence. *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997). The government need not prove the existence of a formal or express agreement among the conspirators; a tacit or mutual understanding is sufficient, so long as the agreement is proven beyond a reasonable doubt. *Id.* at 970-71.

Gunter argues that even if the trial testimony is accepted in the light most favorable to the government, the government failed to establish anything more than a buyer-seller relationship between Gunter and Banks. This argument lacks merit. While a buyer-seller relationship alone does not establish a conspiracy, evidence of repeat purchases can. *United States v. Brown*, 332 F.3d 363, 373 (6th Cir. 2003). Further, "[a] large volume of narcotics creates an inference of conspiracy." *United States v. Bourjaily*, 781 F.2d 539, 545 (6th Cir. 1986) (finding that one kilogram of cocaine was a large volume), *aff'd*, 483 U.S. 171 (1987).

The evidence at trial established that Gunter had purchased cocaine in the range of one to four kilograms in the past, that he had provided funds for the purchase of another two kilograms, and that he indicated an intent to make repeat transactions in the future. These facts demonstrate both repeated transactions, like in *Brown*, and a large volume of cocaine, like in *Bourjaily*. Gunter's actions establish more than a buyer-seller

relationship, and we conclude that they provide sufficient evidence to support the jury's verdict.

### III.          Impeachment with Evidence of Prior Convictions

#### A.          Standard of Review

This Court reviews a district court's denial of a motion *in limine* for abuse of discretion. *United States v. Talley,* 194 F.3d 758, 765 (6th Cir. 1999).  A district court abuses its discretion when it relies on clearly erroneous findings of fact, when it improperly applies the law, or when it employs an erroneous legal standard. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995).

#### B.          Analysis

Gunter argues that the district court erred when it ruled that if he elected to testify, the government could impeach him with his prior convictions for theft.  The district court denied Gunter's motion *in limine*, finding that because theft is an offense involving dishonesty under Tennessee state law, the convictions could be used for impeachment purposes under Rule 609(a)(2).  The court also held that in the event Gunter testified and placed his credibility at issue, any unfair prejudice would be outweighed by the impeachment value of the testimony, and the convictions would be admissible under Rule 609(a)(1).  After these rulings, Gunter chose not to testify.  On appeal, Gunter argues that the district court erred as a matter of procedure, and that the decision effectively deprived him of his constitutional right to testify.

The government asserts that because Gunter did not testify, Gunter's objection to the district court's ruling is not cognizable on appeal under *Luce v. United States*, 469 U.S. 38 (1984).  We agree.  In *Luce,* a federal defendant argued that the district court abused its discretion in ruling that he could be impeached with his prior conviction. The Supreme Court affirmed the conviction, reasoning that any harm from the challenged

ruling was speculative, and holding that "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." *Id.* at 43.

Gunter attempts to distinguish *Luce* by arguing that it was decided as an interpretation of Fed. R. Evid. 609 and by arguing that the Court did not reach the constitutional right to testify, as it did three years later in *Rock v. Arkansas*, 483 U.S. 44 (1987). This argument is unpersuasive. This Court has continued to apply *Luce*, even after *Rock* was decided, to hold that the admissibility of prior convictions is not appealable when a defendant does not testify. *See United States v. Godinez*, 114 F.3d 583, 586 (6th Cir. 1997); *United States v. Sanderson*, 966 F.2d 184, 189 (6th Cir. 1992). Moreover, the Supreme Court has since decided *Ohler v. United States*, 529 U.S. 753 (2000), where it found no constitutional violation in a ruling that might *deter* defendants from taking the stand, so long as it does not *prevent* them from doing so. *Id.* at 759. The Court explained that "it is not thought inconsistent with the enlightened administration of criminal justice to require the defendant to weigh such pros and cons in deciding whether to testify." *Id.* at 759-60 (quoting *McGautha v. California*, 402 U.S. 183 (1971)). Consistent with *Luce* and *Ohler*, we find that Gunter was not prevented from testifying and that, by failing to do so, he waived his right to appeal the *in limine* ruling regarding the admissibility of his prior crimes.

## IV.     The Jury Instructions

### A.      Standard of Review

Disputes regarding jury instructions are questions of law that are reviewed *de novo*. *William ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 365 (6th Cir. 2005). The refusal to give a requested instruction is reviewed for abuse of discretion. *Id.* "A district court's refusal to deliver a requested instruction is reversible only if that instruction is (1) a correct statement of the law; (2) not substantially covered by the charge actually delivered to the jury; and (3) concerns a point so important in the trial

that the failure to give it substantially impairs the defendant's defense." *United States v. Williams*, 952 F.2d 1504, 1512 (6th Cir. 1991).

### B.    Analysis

Gunter was convicted of the lesser-included offense of conspiracy to distribute and possession with intent to distribute more than 500 grams but less than five kilograms of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B), and 846.

The district court provided the following instructions:

> The essential elements of the first lesser offense in regard to the indictment, each of which the government must prove beyond a reasonable doubt, are:
>
> *First*:  That two or more persons, directly or indirectly, reached an agreement to distribute and to possess with intent to distribute cocaine.
>
> *Second*:  That the defendant, Michael Charles Gunter, knew of the unlawful purpose of the agreement;
>
> *Third*:  That the defendant joined in the agreement willfully, that is, with the intent to further its unlawful purpose; and
>
> *Fourth*:  That the overall scope of the conspiracy involved at least 500 grams but less than 5 kilograms of cocaine.

(J.A. 1379-80.)

Gunter argues that the district court abused its discretion by failing to instruct the jury that, as to the first element of the offense, the jury had to find beyond a reasonable doubt that "two or more persons directly or indirectly reached an agreement to distribute and to possess with intent to distribute five kilos or more [or, in this case, the lesser-included statutory amount] of cocaine."  (J.A. 1296.)  He argues that the district court was required to provide the proposed instruction because under *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the government is required to prove the defendant *knew* the drug quantity involved in the alleged conspiracy.

We disagree.  It is settled, even after *Apprendi*, that the "government need not prove *mens rea* as to the type and quantity of the drugs" in order to establish a violation of § 841(b).  *United States v. Villarce*, 323 F.3d 435, 439 (6th Cir. 2003); *United States v. Garcia*, 252 F.3d 838, 844 (6th Cir. 2001).  As the *Garcia* Court explained, drug type and quantity are irrelevant to the *mens rea* element of § 841(a), which requires nothing more specific than an intent to distribute a controlled substance.  252 F.3d at 844.  Likewise, intent is irrelevant to the penalty provisions of § 841(b), which require only that the specified drug types and quantities be "involved" in an offense.  *Id.*  Here, the fourth element of the court's instruction satisfies *Apprendi*, and we find that the requirement that the jury find the quantity involved in the offense beyond a reasonable doubt was "substantially covered by the charge actually delivered to the jury" as required in *Williams*, 952 F.2d at 1512.

Accordingly, we conclude that the district court did not abuse its discretion by failing to deliver the requested instruction.

**CONCLUSION**

For the reasons stated above, we **AFFIRM** the judgment of the district court.