NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0359n.06

No. 13-5693

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellee, | ) | May 09, 2014 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| STEPHEN MCLAUGHLIN, | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |

BEFORE: KEITH, SILER, and ROGERS, Circuit Judges

**DAMON J. KEITH, Circuit Judge.** A jury convicted Defendant Stephen McLaughlin of two counts of wire fraud, in violation of 18 U.S.C. § 1343, and one count of aggravated identity theft, in violation of 18 U.S.C. § 1028(a)(1). The district court sentenced McLaughlin to 36 months' imprisonment, and entered orders of forfeiture and restitution. McLaughlin appeals one of the counts against him for wire fraud, as well as the court's orders of forfeiture and restitution. We **AFFIRM** McLaughlin's conviction and the order of restitution, but **REVERSE** the court's forfeiture award and **REMAND** for proceedings consistent with this opinion.

I.

In late 2008, Defendant Stephen McLauglin started an equipment-leasing company called EquipLinq. EquipLinq was in the business of leasing or purchasing heavy equipment on credit and then leasing that equipment to its customers. McLaughlin was the president and majority owner of EquipLinq, worked there on a daily basis, and made all managerial decisions at the

1

company, including hiring and firing decisions as well as disbursements of profits. McLaughlin did not receive a salary from EquipLinq nor did he invest any money in the company himself; instead, he obtained investments from others, including $25,000 from Nicholas Serban and $100,000 from Scott Forhetz.

In 2011, McLaughlin was indicted on six counts of wire fraud, mail fraud, and identity theft for allegedly forging the signatures of Mr. Serban and Mr. Forhetz on credit applications that he submitted on behalf of EquipLinq. After a jury trial, McLaughlin was convicted on Count 1 (submission of a forged signature of Nicholas Serban on an "Account Agreement and Terms" and "Guaranty" agreement with Hertz Equipment Rental); Count 3 (submission of a forged signature of Scott Forhetz on a "Commercial Revolving Account Application" with CNH Capital); and Count 6 (aggravated identity theft relating to Count 3).

The parties waived a jury trial on the forfeiture claim. The district court adjudicated that claim, finding that $55,277.01 represented the proceeds of the three counts of conviction and was subject to forfeiture. The court then sentenced Mr. McLaughlin to 12 months' imprisonment as to Counts 1 and 3, to run concurrently, and 24 months as to Count 6, to run consecutively to the other two counts, for a total of 36 months. The court also ordered McLaughlin to pay $61,302.01 in restitution—the same amount determined in the forfeiture proceeding—plus approximately $6,000 in legal fees to Hertz. This appeal followed.

II.

McLaughlin challenges the sufficiency of evidence as to his conviction on Count 1 as well as the orders of forfeiture and restitution against him as being based on the total earnings of his company and not attributable to or proximately caused by his conduct.

A.

We review de novo the sufficiency of the evidence to sustain a conviction. *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009). A defendant bringing such a challenge bears a "very heavy burden." *United States v. Daniel*, 329 F.3d 480, 485 (6th Cir. 2003). Evidence is sufficient to sustain a conviction if "after viewing the evidence in the light most favorable to the prosecution, and after giving the government the benefit of all inferences that could reasonably be drawn from the testimony, any rational trier of fact could find the elements of the crime beyond a reasonable doubt." *Gunter*, 551 F.3d at 482. In examining claims of insufficient evidence, this Court does not "weigh the evidence presented, consider the credibility of witnesses, or substitute [its] judgment for that of the jury." *Id*.

To establish that a defendant is guilty of wire fraud under 18 U.S.C. § 1343, the government must prove "(1) a scheme or artifice to defraud; (2) use of interstate wire communications in furtherance of the scheme; and (3) intent to deprive a victim of money or property." *Daniel*, 329 F.3d at 485. McLaughlin alleges that, while the jury could have believed that someone forged Mr. Serban's signature on the loan application, it was too great of a leap for the jury to determine that it was actually McLaughlin who committed the forgery. We disagree.

At trial, the prosecution sought to prove that McLaughlin forged Serban's signature on a credit application to Hertz financing. The prosecution did not introduce any eyewitness

3

testimony to the alleged forgery, nor did it introduce any handwriting experts to the jury. Rather, the prosecution only presented evidence of a pair of signatures, one of which purportedly belonged to McLauglin, and another which purportedly belonged to Mr. Serban. Serban's name on this document was incorrectly spelled "Nickolas" instead of "Nicholas," on three different signature lines. Serban expressly disclaimed signing the document.

McLaughlin concedes that while the jury could have reasonably concluded that the signature allegedly belonging to Serban was, in fact, made by someone other than Serban, the prosecution improperly asked the jury to make a convoluted set of logical leaps to arrive at the conclusion that it was McLaughlin who had forged the signature.

> (1) [T]he jury would view the signature on Exhibit 1A purporting to be that of Mr. McLaughlin; (2) compare that signature with the only verified exemplar of Mr. McLaughlin's signature, Exhibit 2L, and conclude that the signature on Exhibit 1A is Mr. McLaughlin's; (3) compare Mr. McLaughlin's alleged signature on Exhibit 1A with the presumptively forged signature of Nicholas Serban on Exhibit 1A and conclude that Mr. McLaughlin signed Nicholas Serban's name on that document.

Appellant's Br. at 36.

This third step, according to McLaughlin, required the jury to draw conclusions which it was not equipped to draw, namely "comparing an alleged signature of one name with a signature of another name to determine that they were signed by the same person." *Id*. at 36-37.

We need not address McLaughlin's contention, however, because the statute does not require that the prosecution prove that McLaughlin himself forged Serban's signatures; rather, th prosecution need prove only that he caused the Hertz Credit Application to be transmitted to

Hertz, knowing that the document bore a forged signature or other false information, with the intent to deprive someone (in this case Hertz) of money or property. *See* 18 U.S.C. § 1343.

That McLaughlin signed the Hertz Credit application as a "witness" to Serban's signature is not in dispute.[1] There is also ample evidence, as the prosecution concedes, to establish that Mr. Serban's signature had been forged, including *inter alia*, the fact that his name was misspelled on all three signature lines of the document.

The jury could then make a legitimate inference that McLaughlin prepared and caused the Hertz application to be transmitted, while knowing that Serban's signature had been forged. Whether McLaughlin actually forged Serban's signature is irrelevant, so long as he knowingly *caused* the application to be transmitted to Hertz, with the knowledge that Serban had not actually signed the application. Accordingly, we **AFFIRM** McLaughlin's conviction as to this Count.

B.

Next, we address the court's orders of restitution and forfeiture. This Court has explained that restitution and forfeiture are two legally distinct remedies:

> Restitution is remedial in nature, and its goal is to restore the victim's loss. Forfeiture, in contrast, is punitive; it seeks to disgorge any profits that the offender realized from his illegal activity. Given their distinct nature and goals, restitution is calculated based on the victim's loss, while forfeiture is based on the offender's gain.

*United States v. Boring*, 557 F.3d 707, 714 (6th Cir. 2009) (quoting *United States v. Webber*, 536 F.3d 584, 602–03 (7th Cir. 2008) (citations omitted)).

---

[1] McLaughlin did not contest this fact at trial nor on appeal. Nonetheless, a rational jury could also have independently determined that McLaughlin signed the Hertz Credit application by comparing his signature in Government Exhibit 2L to his signature on the Hertz application.

Here, the district court seemingly conflated the basis for assessing the two remedies. We affirm the court's order of restitution, but because the defendant did not personally benefit from any funds that the company obtained as a result of the alleged forgery, we reverse the court's order of forfeiture.

1.

A district court may order a defendant to make restitution to "an identifiable victim or victims [who] has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(a)(1), (c)(1)(B). A "victim" is defined as "a person directly and proximately harmed as a result of the commission of" the offense. 18 U.S.C. § 3663A(a)(2); *United States v. Kratt*, 579 F.3d 558, 565 (6th Cir. 2009). In calculating restitution, "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Kratt*, 579 F.3d at 565.

We review the district court's order of restitution in this case—where the defendant did not object to the order of restitution at sentencing—for plain error. *United States v. Rozin*, 664 F.3d 1052, 1066 (6th Cir. 2012). "To establish plain error, a defendant must show that: (1) an error occurred in the district court; (2) the error was obvious or clear; (3) the error affected defendant's substantial rights; and (4) this adverse impact seriously affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Gardiner*, 463 F.3d 445, 459 (6th Cir. 2006) (citations omitted); *see also United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008). "The plain error doctrine mandates reversal only in exceptional circumstances and only where the error is so plain that the trial judge and prosecutor were derelict in countenancing it." *Gardiner*, 463 F.3d at 459 (citations omitted).

6

The district court ordered McLaughlin to pay $61,302.01 in restitution to Hertz and CNH, the two lenders that were not repaid after extending credit to EquipLinq based upon forged applications McLaughlin submitted to them. McLaughlin argues that the harm to the lenders was "simply too remote and contingent for a restitution award of the *entirety* of that loss to stand." Appellant Br. at 47 (emphasis in original). Specifically, McLaughlin admits that while he may have been a "direct" or "but for" cause of the loss, i.e., that Hertz and CNH would not have extended credit to Equiplinq but for McLaughlin's alleged forgery, he nonetheless argues that he was not the *proximate* cause of the entirety of the harm.

McLaughlin's contention, however, is misplaced. *See United States v. Sosebee*, 419 F.3d 451 (6th Cir. 2005). In *Sosebee*, the defendant was convicted of misprision of a felony for concealing a scheme involving bogus "charge backs" or discounts on orders their medical supply company placed with a pharmaceutical manufacturer. *Id*. at 453. The district court ordered restitution in the amount of the entire loss to the pharmaceutical company that resulted from the scheme. This Court affirmed, noting that the defendant's concealment of the fraud "was a direct and proximate cause of some or all of the victim's losses, even if it was not the sole cause." *Id*. at 459. Similarly, in this case, McLaughlin's action of causing false or forged documents to be transmitted to Hertz and CNH for the purpose of securing credit was similarly the "direct and proximate" cause, whether or not it was the sole cause.

In addition, McLaughlin's argument can also be readily dismissed based upon the explicit text of the agreements themselves, as both the Hertz Credit Application and the CNH Credit Application contained explicit provisions stating that the signor would be liable for any debts that accrued, even if those debts accrued based on credit that was extended beyond the credit in

7

the initial credit applications. R. 81-1, PgID 748; R. 81-10, PgID 773. That Hertz extended its credit beyond the $5,000 originally agreed upon in the credit application to $44,325.20, based on a "[p]rocess of promise to pay, having pay history, giving us checks of payment due, so we would be lenient to extend this credit, let stuff go through and paying – having EquipLinq pay us," R. 74, PgID 378, 384; R. 81-4, PgID 758, does not disrupt this chain of proximate causation.

Likewise, the CNH application contained a similar provision that obligated Scott Forhetz to pay for any charges incurred under the agreement, whether or not those charges were part of the original agreement. This application formed the basis of Count 3, for which McLaughlin was convicted, and that he does not challenge in this appeal. Thus, because CNH was unable to recover its losses from Forhetz, McLaughlin is responsible in restitution for whatever losses CNH incurred while McLaughlin was president and part-owner of the company, which the district court calculated in the amount of $10,951.81. Accordingly, we **AFFIRM** the court's award of restitution.

2.

Next, we review the district court's forfeiture award. In reviewing a district court's order of forfeiture, we review the district court's factual findings for clear error and its conclusion that such facts "are sufficient to constitute a proper criminal forfeiture" de novo. *United States v. Droganes*, 728 F.3d 580, 586 (6th Cir. 2013). Forfeiture is proper under 18 U.S.C. § 982(a)(2) for any property constituted, or derived from, "proceeds the [defendant] obtained directly or indirectly, as the result of [certain illegal conduct]." *United States v. Warshak*, 631 F.3d 266, 332 (6th Cir. 2010) (quoting 18 U.S.C. §982(a)(2)). The government's burden to prove

8

forfeiture is by a preponderance of the evidence. *United States v. Jones*, 502 F.3d 388, 391 (6th Cir. 2007).

At the forfeiture hearing before the district court, the Government argued that McLaughlin's forfeiture liability derives from the possible forfeiture liability of the corporation:

> Well, Your Honor, with regard to being traceable to the defendant, as the Court knows, the corporation can only act but through an individual. In this case, the indictment alleges that this corporation acted through Mr. McLaughlin as its president. So *to the extent that the corporation is responsible, it transfers to Mr. McLaughlin personally*.

R. 78, PgID 694 (emphasis added). The district court adopted this reasoning in holding that McLaughlin would be subject to the entire forfeiture claim:

> The Court is going to grant the forfeiture claim as to Count One $44,325.20 and as to Count Three $10,951.81 for a total of $55,277.01. The basis is that the defendant benefited indirectly as a result of the crimes, and the money to be forfeited constitutes the proceeds that the defendant obtained indirectly as a result of the crimes.
>
> The record does not indicate that Mr. McLaughlin directly received the money. However, *the corporation that he ran and was president of clearly benefited from the funds, and he benefited indirectly in that regard.*

R. 78, PgID 696 (emphasis added).

We disagree. It is well-established that a defendant "cannot be ordered to forfeit profits that he never received or possessed." *United States v. Contorinis*, 692 F.3d 136, 145 (2d Cir. 2012). There is not a strong basis to impute the company's receipts to McLaughlin based on the theory that he benefited indirectly from the company's incoming cash flow. McLaughlin's company, EquipLink, was never indicted in this case and there are no allegations that corporate formalities were disregarded for McLaughlin's personal benefit. Nor did McLaughlin exert the type of control necessary to subject him to personal liability for the company's losses. He did not receive a salary from EquipLinq, and there is no evidence in the record of any direct

9

payments from EquipLinq to McLaughlin, besides a few unquantified meals and trips to the grocery store.[2] Rather, the record reveals that the funds that were unlawfully obtained by McLaughlin were used by the company to pay other employees' salaries, to pay back some of the individuals who had initially invested in the company, and to run the company's—otherwise legitimate—operations. R.74, PgID 327, 345-52; R. 75, PgID 566-68.

*Cantorinis*, 692 F.3d at 147, is instructive. There the Second Circuit reversed a $12.65 million forfeiture judgment against an employee and small equity owner of a fund, because the forfeiture order was for the total profits of the fund traceable to the illegal behavior and the defendant never received or possessed the profits. *Id.* at 145. Although *Contorinis* involved securities fraud, the reasoning of the court is applicable since it relied on general principles of forfeiture, namely that forfeiture involves "a person's losing an entitlement as a penalty for certain conduct." *Id.* at 146. Conceding that a defendant may "forfeit proceeds received by others who participated jointly in the crime"—which is comparable to the possibility of forfeiting "indirectly" obtained proceeds[3]—the court found that "extending the scope of a forfeiture to include proceeds that have never been acquired either by a defendant or his joint

---

[2] EquipLinq's accountant testified at trial that McLauglin used the company credit card on certain occasions:

> I will see on the company credit card on the company bank account bank withdrawals or a few charges to like Publix or Winn-Dixie or one of those supermarkets and things like that. Dinners that could not be specifically explained as entertainment for prospective clients, things like that.

R.74, PgID 326.

[3] *But see United States v. Torres*, 703 F.3d 194, 201–02 (2d Cir. 2012) (distinguishing *Contorinis* because the forfeiture statute in *Contorinis* did not include the language "obtained . . . indirectly").

actors would be at odds with the broadly accepted principle that forfeiture is calculated based on a defendant's gains." *Id.* at 147. Importantly, the court signaled to the district court to provide a more fine-toothed approach on remand:

> To what extent appellant's interest in salaries, bonuses, dividends, or enhanced value of equity in the Fund can be said to be money "acquired" by the defendant "through the illegal transactions resulting in the forfeiture," 18 U.S.C. § 981(a)(2)(B), we leave to the district court to decide on remand in a manner not inconsistent with this opinion.

*Id.* at 148 n.4. Likewise, in this case, the Government has failed to meet its burden of demonstrating that McLaughlin benefited from the unlawfully obtained funds, in some meaningful way, beyond a few fringe purchases.

Next, citing *United States v. Peters*, 257 F.R.D. 377 (W.D.N.Y. 2009), the Government argues that McLaughlin exercised sufficient control over the company such that he should be subject to forfeiture for the unlawfully obtained funds. This argument is equally unavailing. In *Peters*, the defendant was convicted of various bank fraud-related offenses and ordered to criminally forfeit fraudulent loan proceeds of over $28 million, which were received by two corporations he partially owned. *Id.* at 385-87. The defendant contested the forfeiture order, arguing that he did not "obtain" the proceeds directly or indirectly because the funds went to the corporations, not to the defendant directly. *Id.* at 384.

In applying an "alter ego" theory of liability, the court framed the question as whether "the corporate form [should] be[] set aside to effectuate the remedial purpose of [the] forfeiture statute." *Id.* The court found that the corporations were the defendant's "alter egos" because the defendant controlled the corporations on a day-to-day basis, hired new employees and

restructured the company, made purchasing decisions, directed employees, transferred funds and had access to the corporate accounts. *Id.* at 385-87.

Although not controlling, *Peters* can nevertheless be distinguished, because in that case, the court found that the defendant had complete domination of the corporation because he and his close family members owned all but 1% of the corporate stock and the defendant controlled the day-to-day business of the corporation. Here, McLaughlin owned no more than45% of the shares, and was even eventually ousted as CEO after a takeover. R. 75, PgID 593-94. Notably, however, *Peters* is instructive in that it provides an example of the type of detailed factual analysis—which was absent from this case—that is required before a district court may enter an order of forfeiture.

Finally, the Government's invocation of *Warshak*, 631 F.3d 266, does not require us to affirm the award of forfeiture against McLaughlin. In *Warshak*, this Court held that a corporation and its owners and officers were altogether jointly and severally liable in forfeiture for all of its revenues where that corporation's initial outstanding success was due predominantly to fraudulently obtained sales—the corporation signed consumers up for an expensive auto-enroll program that was not represented accurately at the time of the initial purchase. *Id.* at 333. Even though there were some legitimate sales, all corporate revenues were tainted by the initial sales: "Any money generated through these potentially legitimate sales is nonetheless subject to forfeiture, as the sales all resulted 'directly or indirectly' from a conspiracy to commit fraud. The same can be said for any sales that occurred at retail because those sales were the outgrowth of [the company's] fraudulent beginnings." *Id.* at 332 (internal citation omitted).

*Warshak* is not applicable here, however, because the forfeiture order in that case was based on an underlying conspiracy between the corporation, its owner, and its main officers. *United States v. Warshak*, No. 1:06-CF-00111, 2008 WL 2705044, at \*1 (S.D. Ohio July 8, 2008). In this case, neither the corporation nor any other officers or directors were indicted; McLaughlin alone was indicted and convicted of mail and wire fraud, so the theories of corporate and accomplice liability which justified the forfeiture order in *Warshak* do not apply. Moreover, whereas in *Warshak*, the court found that "the entire operation was permeated with fraud, and that income generated from fraud cycled through [the company's] operations during the entire period of the Indictment," 2008 WL 2705044, at \*4, here, the underlying business of EquipLinq was not deemed to be fraudulent. The fraud involved only one aspect of its relationship with its creditors. Accordingly, we **REVERSE** the district court's forfeiture order and **REMAND** for further proceedings consistent with this opinion.

13