NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0319n.06

No. 22-3714

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
Jul 13, 2023
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| AARON MICHAEL JAMES, | ) | OHIO |
| Defendant-Appellant. | ) | OPINION |
| | ) | |

Before: STRANCH, BUSH, and MURPHY, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.** During a multi-year investigation into a large-scale marijuana and tetrahydrocannabinol (THC) enterprise in Michigan, law enforcement learned that Defendant Aaron James was distributing marijuana and THC products in Northern Ohio. Law enforcement executed a warrant to search James's Cleveland Heights, Ohio residence and seized a significant amount of marijuana and substances containing THC. James moved to suppress that evidence, but the district court denied the motion. For the reasons set forth below, we **AFFIRM**.

## I. BACKGROUND

On November 20, 2020, Special Agent Jared Prill of the Ohio Bureau of Criminal Investigation applied for a warrant to search the residence of Defendant Aaron James for evidence of drug trafficking. The affidavit sought authorization to search two distinct addresses—1696 and 1698 Coventry Road—within one residential house in Cleveland Heights, Ohio. James lived on one story of the house at 1698 Coventry, and an associate, Zoli Saunt, lived on another story at

1696 Coventry. In his affidavit, Agent Prill set out the following information in support of a finding of probable cause.

Through a multi-year investigation, law enforcement confirmed James's involvement in a large-scale marijuana and THC enterprise in Michigan that routinely served as a "source of supply for drug dealers in Northeast Ohio." The enterprise consisted of 20 homes within a gated community in Michigan, which were used to cultivate marijuana and "extract THC distillate" for distribution in Ohio. Prill averred that he had executed thirteen warrants related to the operation, resulting in the seizure of "hundreds of thousands of dollars of narcotics and . . . drug proceeds." Nine of the warrants were executed in Cuyahoga County, which encompasses the city of Cleveland Heights, Ohio.

Investigators tied James to the Michigan operation through physical surveillance, utility records, and "multiple registered confidential informants." According to the informants, James worked at several of the Michigan houses, including one that operated a THC extraction lab, and electronic surveillance and informants revealed that James traveled back and forth from Cuyahoga County, Ohio, to Michigan on "almost a weekly basis." James had recently purchased THC extraction equipment from one informant, who also provided "detailed information" regarding James's cultivation and distribution efforts, including a recent "large harvest of marijuana plants." Another informant told law enforcement that James regularly distributed THC products—as pictured on an Instagram account he operated—in Northern Ohio. Relatedly, Agent Prill noted that James purchased a new truck and paid rent and utilities in Michigan and Ohio despite having no legitimate occupation.

James was tracked to 1698 Coventry Road through surveillance, and Agent Prill confirmed that James lived at the address with tenant information filed in Cleveland Heights. The

investigation also implicated Saunt, who lived in the same multifamily home, with his address at 1696 Coventry Road. A "reliable and credible" informant advised law enforcement that Saunt distributed bulk amounts of marijuana and THC products, and further investigation revealed that James and Saunt were associates. During one surveillance period, the pair were observed interacting with each other "throughout the day" and using a common side door of the multifamily home.

The affidavit described three instances of suspicious behavior around the Coventry Road residence. First, an associate of James was observed traveling from the Michigan drug operation to James's residence on Coventry Road on October 31, 2020. A week later, law enforcement seized a large haul of marijuana and THC products, along with $47,000, transported by the associate from Michigan to Ohio. Second, on November 16, a man in a hooded sweatshirt entered the common side door of the Coventry Road residence and exited approximately twenty minutes later with a "large bulging item in the pocket of his sweatshirt." Finally, on November 18, a man carrying an empty backpack entered the side door and exited with the backpack approximately ten minutes later. Agent Prill averred that "[t]his in and out behavior is consistent with . . . narcotics trafficking."[1]

On November 20, a judge of the Cuyahoga County Court of Common Pleas issued the warrant, and five days later, law enforcement executed it, seizing a significant amount of marijuana and other substances containing THC from James's residence at 1698 Coventry. A federal grand jury indictment followed. James moved to suppress any evidence obtained pursuant to the warrant,

---

[1] In addition to these three instances, the affidavit detailed three trash pulls from the residence that uncovered evidence connecting Saunt (but not James) to drug trafficking. Law enforcement found packaging for marijuana and THC products and "cut vacuum sealed bags" that Agent Prill believed previously contained marijuana and THC related items.

arguing that the affidavit in support failed to establish probable cause, but the district court denied the motion, finding that the affidavit did establish probable cause, and, nonetheless, the good faith exception established in *United States v. Leon*, 468 U.S. 897 (1984), applied. Ultimately, James pled guilty to a superseding information charging him with one count of possession with intent to distribute marijuana in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(D), while reserving the right to appeal the district court's denial of his motion to suppress. The district court imposed a sentence of 12 months and one day and a three-year term of supervised release.

## II.    ANALYSIS

James appeals the district court's denial of his motion to suppress the evidence discovered during the November 25 search of his residence at 1698 Coventry Road. He argues that the affidavit in support of the search warrant failed to establish probable cause that evidence of drug trafficking would be found at 1698 Coventry Road and that the good faith exception does not otherwise save the evidence from suppression. We review the district court's factual findings for clear error and its legal conclusions de novo, viewing the evidence in a light most favorable to the Government. *United States v. Lott*, 954 F.3d 919, 922 (6th Cir. 2020).

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. To establish probable cause, there must be a link or "nexus" between the specific place to be searched and the specific things to be seized; there must be a fair probability that "incriminating evidence [will] be found *there*, rather than in some other place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). To determine whether a warrant was supported by probable cause, "we look only to the four corners

of the affidavit." *United States v. Waide*, 60 F.4th 327, 337 (6th Cir. 2023) (quoting *United States v. Abernathy*, 843 F.3d 243, 249 (6th Cir. 2016)).

James does not dispute that the affidavit in support of the warrant provided probable cause to believe that (1) he distributed drugs and (2) he resided at 1698 Coventry Road in Cleveland Heights. Nor could he. The affidavit provided a lengthy list of supporting facts tying James to the drug enterprise in Michigan and drug distribution in Northern Ohio, and it tied him directly to 1698 Coventry through public filings in the city and surveillance. James instead argues that the affidavit did not satisfy the nexus requirement because it did not set out a fair probability that evidence of his drug trafficking would be found at 1698 Coventry.[2]

James's challenge hits on a common pressure point of our nexus requirement jurisprudence as it applies to drug distribution cases. Our caselaw has rejected the proposition that a defendant's "status as a drug dealer, standing alone, gives rise to a fair probability that drugs will be found in his home," *United States v. Brown*, 828 F.3d 375, 383 (6th Cir. 2016) (quoting *United States v. Frazier*, 423 F.3d 526, 533 (6th Cir. 2005)), while also recognizing that "[i]n the case of drug dealers, evidence is likely to be found where the dealers live," *United States v. Sumlin*, 956 F.3d 879, 886 (6th Cir. 2020) (quoting *United States v. Jones*, 159 F.3d 969, 975 (6th Cir. 1998)). We have balanced the tension between these two propositions "in fact-specific ways," considering the recency, frequency, and quantity of the drug dealing and its proximity to the residence as a few of the dividing lines. *See United States v. Reed*, 993 F.3d 441, 448-49 (6th Cir. 2021). For example, affidavits describing low-volume drug activity or drug activity in the distant past have been

---

[2] Before the district court, James made several arguments attacking the accuracy and reliability of statements in the affidavit and requested a hearing pursuant to *Franks v. Delaware*, 348 U.S. 154 (1978), alleging that the affidavit contained false or reckless statements and included material omissions. Before this court, however, James raises only a challenge that there were insufficient facts to establish a nexus between his criminal activity and his residence and that the good faith exception does not apply.

deemed insufficient, *see, e.g.*, *Brown*, 828 F.3d at 378-80, 382-84, while affidavits describing large quantities of drugs routinely distributed as part of an "ongoing" drug operation have been approved, *see, e.g.*, *United States v. Gunter*, 551 F.3d 472, 482 (6th Cir. 2009). But we need not decide on which side of the line the affidavit in this case falls because it clearly lands within the purview of the good faith exception.

The exclusionary rule requires suppression of evidence obtained in violation of the Fourth Amendment. *Illinois v. Krull*, 480 U.S. 340, 347 (1987). But because the exclusionary rule seeks to deter *police* misconduct rather than punish the legal errors of judges, the Supreme Court has identified an exception when an officer executes a warrant in reasonable reliance on a neutral magistrate's finding of probable cause. *See Leon*, 468 U.S. at 916, 922-23. There are, however, exceptions to the exception—circumstances in which officers are "sufficiently blameworthy to trigger the exclusionary rule despite a judge's warrant." *Reed*, 993 F.3d at 450. James raises one such exception: He argues that Agent Prill's affidavit was so "bare bones" that it was unreasonable for him to rely on the warrant issued by the state judge.[3] "Bare bones" affidavits are those "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (quoting *Leon*, 468 U.S. at 923). Relevant in the residential nexus context, the good faith exception requires a minimally sufficient nexus—one that provides "some plausible connection" between the criminal activity and the place to be searched. *Brown*, 828 F.3d at 385-86.

---

[3] The Government argues that we should review James's claim that the good faith exception does not apply under the plain error standard because he argues for the first time on appeal that the affidavit was "bare bones." But "we typically find no forfeiture on appeal when 'a particular authority or strain of the argument was not raised below, as long as the issue itself was properly raised.'" *Reed*, 993 F.3d at 453 (quoting *Mills v. Barnard*, 869 F.3d 473, 483 (6th Cir. 2017)). We therefore review James's good faith claim de novo. *Id.* at 446.

The affidavit in this case contained a minimally sufficient nexus between James's drug dealing and his residence at 1698 Coventry.  It explained his back-and-forth travel to a large-scale marijuana and THC enterprise in Michigan and his ongoing role in manufacturing marijuana and THC products and regularly distributing them in Northern Ohio in the months leading up to the search.  Additionally, the affidavit noted several instances of suspected drug trafficking behavior at or near James's residence.[4]  The recency, frequency, scale, and continuous nature of these activities and the proximity of suspected drug dealing activity to 1698 Coventry may satisfy the nexus requirement for probable cause.  *See United States v. McCoy*, 905 F.3d 409, 418 (6th Cir. 2018); *Gunter*, 551 F.3d at 481-82; *United States v. Kenny*, 505 F.3d 458, 461-62 (6th Cir. 2007).  But we have cautioned that "our precedent leaves unclear the amount of drug activity required" to satisfy the nexus requirement in the cases involving ongoing drug trafficking.  *Reed*, 993 F.3d at 451.  Regardless, the facts in the affidavit here provided "some modicum of evidence" to establish a minimally sufficient nexus between James's drug dealing and 1698 Coventry in order to invoke the good faith exception.  *McCoy*, 905 F.3d at 416 (quoting *United States v. White*, 874 F.3d 490, 497 (6th Cir. 2017)).  Under the totality of the circumstances, the affidavit was not "bare bones," and Agent Prill reasonably relied on the legal judgment of the state judge that probable cause existed to search 1698 Coventry for evidence of drug trafficking.  *Reed*, 993 F.3d at 452.

## III.    CONCLUSION

For these reasons, we **AFFIRM** the district court's order denying James's motion to suppress the evidence.

---

[4] James makes much of the fact that the officers did not observe any drug dealing activity *inside* his home at 1698 Coventry (as opposed to the Coventry Road residence generally).  But our caselaw shows that such a showing is not always necessary.  *Reed*, 993 F.3d at 448-49 (collecting cases).  Even so, Agent Prill undoubtedly had probable cause to believe that both James and Saunt were drug dealers, that they were associates, and that they shared a common door at the Coventry Road residence through which activity consistent with drug dealing occurred.