RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 16a0056p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee/Cross-Appellant,*

    *v.*

        Nos. 14-5790/5850

TERRY MICHAEL HONEYCUTT,

        *Defendant-Appellant/Cross-Appellee.*

Appeal from the United States District Court
for the Eastern District of Tennessee of Chattanooga.
No. 1:12-cr-00144—Harry S. Mattice, Jr., District Judge.

Argued: December 2, 2015

Decided and Filed: March 4, 2016

Before: SILER, MOORE, and GIBBONS, Circuit Judges.

─────────────────

**COUNSEL**

**ARGUED:** Josh Townley, TOWNLEY & LINDSAY, LLC, Rossville, Georgia, for Appellant/Cross-Appellee. Jay Woods, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee/Cross-Appellant. **ON BRIEF:** Christopher A. Townley, TOWNLEY & LINDSAY, LLC, Rossville, Georgia, for Appellant/Cross-Appellee. Jay Woods, UNITED STATES ATTORNEY'S OFFICE, Chattanooga, Tennessee, for Appellee/Cross-Appellant.

    SILER, J., delivered the opinion of the court in which GIBBONS, J., joined, and MOORE, J., joined in the result. MOORE, J. (pp. 20–23), delivered a separate opinion concurring in the judgment.

1

---

**OPINION**

---

SILER, Circuit Judge. A jury convicted Defendant Terry Honeycutt ("Honeycutt") of eleven counts of conspiring to and knowingly distributing iodine while knowing it would be used to manufacture methamphetamine, in violation of 21 U.S.C. §§ 841(c)(2), 843(a)(6), and 846. The district court sentenced Honeycutt to concurrent terms of 60 months' imprisonment for each count, but declined to order any forfeiture. Honeycutt now appeals his conviction, and the Government cross-appeals on the issue of forfeiture. For the following reasons, we **AFFIRM** Honeycutt's § 841(c)(2) convictions, **VACATE** his sentences on the § 843(a)(6) convictions, and **REVERSE** the district court's determination that forfeiture is not warranted.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

**I.     Factual Background**

Honeycutt worked as the salaried employee in charge of sales and inventory in the Brainerd Army Store—which was owned by his brother (and codefendant), Tony Honeycutt ("Tony"). In 2008, having noticed an increasing number of "edgy looking folks" purchasing Polar Pure, an iodine-based water purification product, Honeycutt called the Chattanooga Police Department to ask if the iodine in Polar Pure could be used to manufacture methamphetamine. He spoke to Tommy Farmer, Director of the Tennessee Meth and Pharmaceutical Task Force, who confirmed that Polar Pure was being used to manufacture methamphetamine throughout the community and urged Honeycutt not to sell it "if [he] fe[lt] uncomfortable about it." Afterwards, Director Farmer informed the Police Department and the Drug Enforcement Administration ("DEA") that Honeycutt was selling Polar Pure.

The Brainerd Army Store was the only local retailer that stocked Polar Pure; the product was kept out of sight behind the sales counter, and only Honeycutt and his brother sold it. Each bottle of Polar Pure contains about eight grams of iodine crystals that, if used as instructed, could purify up to five hundred gallons of water. Over time, Honeycutt sold increasing quantities of

iodine, including as many as twelve bottles of Polar Pure in a single transaction (i.e., enough iodine to purify six thousand gallons of water).

In 2009, the DEA, in conjunction with state and local law enforcement, began investigating the Polar Pure sales at the store. The investigation involved surveillance, monitoring of iodine sales, controlled buys by an undercover agent, direct conversations with Honeycutt and his brother, attempts by officers to convince the brothers to stop selling the product to meth producers, and, ultimately, the execution of a search warrant in 2010.

The search revealed that in a three-year period, Polar Pure became the store's highest-grossing item, generating upwards of $269,000 in profit from the sale of more than 20,000 bottles of Polar Pure. Upon questioning, Honeycutt indicated that he and his brother had adopted a "don't-ask-don't-tell" policy after discussions with their iodine supplier. Pursuant to the warrant, agents seized the store's inventory of 307 bottles of Polar Pure. Agent David Shelton testified that after the Brainerd Army Store closed, following the execution of the warrant, the meth labs using the red phosphorus method that required iodine dropped to an "insignificant level," becoming "rare" and "fairly non-existent" in the region.

## II.    Procedural History

A federal grand jury indicted the brothers for various offenses regarding their distribution of iodine while knowing or having reasonable cause to believe it would be used to manufacture methamphetamine. Tony pled guilty, and Honeycutt went to trial. Honeycutt was acquitted of three charges in the indictment, and convicted of the remaining eleven—which involved conspiring to and knowingly distributing iodine in violation of 21 U.S.C. §§ 841(c)(2), 843(a)(6), and 846—although at sentencing the district court merged the counts of the §§ 841(c)(2) and 843(a)(6) offenses that occurred on the same day.

The district court sentenced Honeycutt to concurrent terms of 60 months' imprisonment for each count. It declined to order any forfeiture, reasoning in particular that, as a salaried employee, Honeycutt did not reap the proceeds of the conspiracy.

**DISCUSSION**

I.       **Sufficiency of the Evidence**

A.       **Waiver**

As a threshold matter, Honeycutt disputes the sufficiency of the evidence at various points in his appeal, and yet no sufficiency challenge appears in his statement of the issues. Federal Rule of Appellate Procedure 28(a) explicitly states that an "appellant's brief *must* contain . . . a statement of the issues presented for review."  Fed. R. App. P. 28(a)(5) (emphasis added); *United States v. Baylor*, 517 F.3d 899, 903 (6th Cir. 2008).  Because Honeycutt failed to list these evidentiary challenges among his nine issues presented on appeal, we could dismiss Honeycutt's sufficiency arguments as waived.  *See, e.g.*, *Barrett v. Detroit Heading, LLC*, 311 F. App'x 779, 796 (6th Cir. 2009) (holding that "[t]he provisions of Rule 28(a) are . . . unambiguously mandatory," and deeming waived an argument not listed in the statement of issues presented).  Even assuming that this issue was properly preserved, however, his arguments are plainly meritless.

B.       **Standard of Review**

Evidence is sufficient to support a conviction if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" when "*all of the evidence* is . . . considered." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).

C.       **Conspiracy to Violate §§ 841(c)(2) and 843(a)(6)**

To prove the existence of the conspiracy alleged in Counts One and Two, "the government was required to prove, beyond a reasonable doubt, '(1) an agreement to violate drug laws, (2) knowledge and intent to join the conspiracy, and (3) participation in the conspiracy.'" *United States v. Pritchett*, 749 F.3d 417, 431 (6th Cir. 2014) (quoting *United States v. Gibbs*, 182 F.3d 408, 420 (6th Cir. 1999)).  Here, the Government presented ample evidence for a rational juror to convict Honeycutt of conspiracy to violate §§ 841(c)(2) and 843(a)(6).

Regarding the first element, the evidence showed that Honeycutt and his brother jointly agreed to violate the drug laws by providing iodine for the manufacture of methamphetamine. On November 23, 2009, Tony said, in Honeycutt's presence, "we really don't ask and [the customers] don't tell" why they are buying iodine—even though they had been warned that the type of iodine they were selling was preferred by meth cooks. In 2010, Honeycutt told Agent Shelton that they adopted their don't-ask-don't-tell policy based on the advice of Bob Wallace, their iodine supplier. Honeycutt and his brother both admitted selling iodine, and they were the only ones selling iodine at the store. The evidence thus showed that the brothers shared "a tacit or mutual understanding among the conspirators [that] is sufficient" to show an agreement to violate the drug laws. *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007).

As for the second and third elements, the evidence was more than adequate to establish Honeycutt's knowledge of and willing participation in the conspiracy. For instance, the placement of the iodine behind the counter out of view of regular customers, as well as Honeycutt's deceptive response to Agent Shelton's request for an estimate of the monthly iodine sales reflected knowledge of the conspiracy to violate drug laws and possible intent to delay discovery of the conspiracy. Knowledge of the conspiracy was also manifest in Honeycutt's assertion of a limit on iodine sales that was repeatedly exceeded. Finally, his knowledge of and participation in the conspiracy was proven by his possession and distribution of extraordinary quantities of iodine; his responsibility for the store inventory and for ordering iodine from the supplier; and his engagement in direct sales. With the increasing sales in the face of multiple warnings from law enforcement officers, Honeycutt clearly demonstrated his knowledge about, and continued intent to participate in, the conspiracy.

**D.      Substantive Violations of §§ 841(c)(2) and 843(a)(6)**

The evidence also sufficed to support Honeycutt's substantive convictions under §§ 841(c)(2) and 843(a)(6). To prove a violation of § 841(c)(2), the Government must establish that a defendant (1) knowingly or intentionally possessed a listed chemical while (2) knowing, or having reasonable cause to believe, that the listed chemical would be used to manufacture a controlled substance. *See Pritchett*, 749 F.3d at 428. Similarly, § 843(a)(6) requires that the Government prove that a defendant possessed a chemical or other item which could be used to

manufacture a controlled substance, and, at the time of such possession, knew, intended, or had reasonable cause to believe it would be used in the manufacture of a controlled substance. *See United States v. Swafford*, 512 F.3d 833, 845 n.7 (6th Cir. 2008). The main difference between the two provisions is that § 841(c)(2) requires that the chemical be listed and § 843(a)(6) does not. In this case, the Government presented sufficient evidence for a rational juror to convict Honeycutt of violating both statutes.

With respect to the element of possession, the store's records reflected the sale of more than 20,000 bottles of iodine, and only Honeycutt and his brother sold it.

As for the element of knowing, or having reasonable cause to believe, that the iodine would be used to manufacture a controlled substance, Honeycutt was familiar with the manufacturing process for methamphetamine. He knew cooking meth requires pseudoephedrine, and he understood that although iodine is used in the process, it is not part of the finished product.

Despite repeated warnings by several law enforcement officers that the iodine he was selling was flowing directly into the meth labs of the area, Honeycutt nonetheless continued to sell Polar Pure. And again, although it became the store's best-selling product, he did not display it openly, but rather hid it under the sales counter and sold it only to those customers who requested it—and did so on a don't-ask-don't-tell basis. Moreover, when agents asked Honeycutt to look at photos of suspects who they believed purchased iodine at the store to cook meth, Honeycutt became visibly nervous, indicating that he knew, or reasonably should have known, that said customers were using his iodine to make methamphetamine.

## II.     Multiplicitous Convictions Under 21 U.S.C. §§ 841(c)(2) and 843(a)(6)

Honeycutt next argues that the district court erred by allowing the jury to consider the charged violations of both §§ 841(c)(2) and 843(a)(6). Asserting that "the district court erroneously treated [§§ 841(c)(2)] and [843(a)(6)] as redundant statutes," he contends that § 841(c)(2) applies only to listed chemicals, while § 843(a)(6) applies only to "unlisted" chemicals. Because the facts of his case did not involve an "unlisted" chemical, Honeycutt contends that "the 'mirrored' § 843(a)(6) counts reduced the Government's burden of proof,

unduly confused the jury, and the result of the trial would have been different absent the § 843(a)(6) counts." He is mistaken.

First, he erroneously states that de novo review is the applicable standard. If he were claiming that he had actually been convicted and sentenced for multiplicitous counts in violation of the Double Jeopardy Clause, we would apply a de novo review to determine the issue of multiplicity. *See Swafford*, 512 F.3d at 844. However, when a district court permits multiplicitous counts to go to a jury and then merges them post-verdict, we apply an abuse-of-discretion standard in reviewing that decision. *See United States v. Throneburg*, 921 F.2d 654, 657 (6th Cir. 1990) ("[T]he district court has discretion in deciding whether to require the prosecution to elect between multiplicitous counts . . . . [and] [w]e may reverse only for an abuse of discretion.") (citing *United States v. Reed*, 639 F.2d 896, 904 n.6 (2d Cir. 1981))).

Second, our decision in *Swafford* does not support his view that § 843(a)(6) applies only to "unlisted" chemicals, nor does *Swafford* dictate a different outcome from the district court's decision. In that case, we applied the test set forth in *Blockburger v. United States*, 284 U.S. 299, 304 (1932), determined that §§ 841(c)(2) and 843(a)(6) are in fact multiplicitous, and held that "[b]ecause multiplicity exists, the charges must be merged under § 841(c)(2) to satisfy the prohibition against double jeopardy." *Swafford*, 512 F.3d at 844–46. In this case, the district court agreed with *Swafford* that the overlapping convictions were multiplicitous and remedied the issue by merging the convictions at sentencing.

We have previously held that multiplicity can be thus resolved. *Throneburg*, 921 F.2d at 657 ("[W]hen multiplicitous prosecutions and convictions occur, 'the only remedy consistent with the congressional intent is for the district court, where the sentencing responsibility resides, to exercise its discretion to vacate one of the underlying convictions.'" (quoting *Ball v. United States*, 470 U.S. 856, 864 (1985))).

## III.  The Jury Instructions and Verdict Form

### A.  Standard of review

Honeycutt challenges several of the jury instructions issued in this case. In reviewing jury instructions, we must determine "whether the charge, taken as a whole, fairly and

adequately submit[ted] the issues and applicable law to the jury." *Fencorp, Co. v. Ohio Kentucky Oil Corp.*, 675 F.3d 933, 943 (6th Cir. 2012) (quoting *Fisher v. Ford Motor Co.*, 224 F.3d 570, 575–76 (6th Cir. 2000)). "While the correctness of jury instructions is a question of law, which we review *de novo*, the refusal to give a specifically requested instruction is reviewed for abuse of discretion. A judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial." *Id.* (quoting *Micrel, Inc. v. TRW, Inc.*, 486 F.3d 866, 881 (6th Cir. 2007) (internal citation omitted)). Moreover, absent a timely objection, we review only for plain error. *United States v. Newsom*, 452 F.3d 593, 605 (6th Cir. 2006).

**B.      Constructive Amendment of the *Mens Rea* for the Offenses**

Honeycutt argues that the district court constructively amended the indictment, in that: (1) the jury instructions repeatedly described the violations as involving the possession and distribution of iodine while "knowing and having reasonable cause to believe that [it] would be used to manufacture methamphetamine," and (2) the verdict form summarized the charged offenses as distribution or possession of chemicals "used to manufacture methamphetamine." In Honeycutt's view, the jury instructions and verdict form invited the jury to convict him without proof of the requisite *mens rea*—that he knew or had reasonable cause to believe that the chemical "*will be used* to manufacture a controlled substance."

Insofar as he is challenging the district court's "would be used" phrasing—in light of the statutory language "will be used"—he did not raise that objection below. As "would" is the past tense of "will," *see* Oxford English Dictionary Online (3d ed. 2012) (under "will" definition), and as the jury was charged to assess Honeycutt's *mens rea* at the time of the offenses, the district court's use of "would" was entirely appropriate. Moreover, the district court said "will" and not "would" when reading the statutes, and we have previously affirmed convictions under § 841(c)(2) where the jury was asked to decide whether the defendants possessed and distributed a listed chemical, "knowing and having reasonable cause to believe that the chemical *would* be used to manufacture methamphetamine." *Pritchett*, 749 F.3d at 428 (emphasis added). Thus, the district court's use of this phrasing in its jury instructions did not constitute error—plain or otherwise.

Regarding Honeycutt's claim that the indictment was constructively amended because the verdict form did not exactly mirror its language, he raised that concern during the charge conference, and suggested that the jury should receive only the indictment and a generic form on which to mark guilty or not guilty for each count. The district court refrained from changing the verdict form, but instead invited defense counsel to inform the jury during closing argument that the verdict form was simply a "condensed" version of the indictment. In its charge to the jury, the district court mentioned that the verdict form presented fourteen questions that corresponded to the indictment's fourteen counts, and emphasized that the verdict form did "not [contain] a complete statement, but a brief summary of the charges in the indictment." Moreover, after informing the jury that it would receive a copy of the indictment to review during deliberations, the district court reemphasized the summary nature of the verdict form. Therefore, Honeycutt cannot establish that the verdict sheet "so modif[ied] essential elements of the offense charged that there is a substantial likelihood that [he] may have been convicted of an offense other than that charged in the indictment." *United States v. Barrow*, 118 F.3d 482, 488 (6th Cir. 1997) (quoting *United States v. Hathaway*, 798 F.2d 902, 910 (6th Cir. 1986)).

### C.    Constructive Amendment with the Term "Precursor Chemical"

Next, Honeycutt claims that, because the district court said "precursor chemicals" instead of "listed chemicals" at various points in its instructions and on the verdict form, "[t]he jury was permitted to assume that all 'chemicals' are treated alike in the law." However, not only did the district court clearly use the term "listed chemical" throughout its instructions, but this is not a case in which the jury heard evidence about multiple chemicals or controlled substances, not all of which would be sufficient to sustain a conviction; rather, iodine was the only "chemical" at issue in this case, and uncontroverted evidence established that iodine was a listed chemical. Accordingly, as with the prior claim, Honeycutt has failed to prove any constructive amendment of the indictment.

### D.    Entrapment by Estoppel Instruction

Honeycutt asserts that the Sixth Circuit pattern instruction about entrapment by estoppel improperly shifted the Government's burden of proof to him. However, given that entrapment

by estoppel is an affirmative defense, the district court properly required Honeycutt to bear the burden of proof on that issue.

The challenged pattern instruction—which is principally based on the standard applied in *United States v. Levin*, 973 F.2d 463, 468 (6th Cir. 1992)—requires a defendant to prove the following factors by a preponderance of the evidence:

> First, that an agent of the United States government announced that the charged criminal act was legal.
>
> Second, that the defendant relied on that announcement.
>
> Third, that the defendant's reliance on the announcement was reasonable.
>
> Fourth, that given the defendant's reliance, conviction would be unfair.

6th Cir. Pattern Crim. Jury Instr. 6.09 Entrapment by Estoppel (2015). The Supreme Court has repeatedly upheld the practice of requiring a defendant to prove an affirmative defense by a preponderance of the evidence. *See, e.g*, *Patterson v. New York*, 432 U.S. 197, 210 (1977) ("Proof of the nonexistence of all affirmative defenses has never been constitutionally required.") (upholding a statute that required a defendant charged with murder to bear the burden of proof as to the affirmative defense of acting under extreme emotional distress).

Entrapment by estoppel is an affirmative defense that does not negate an element of either of the crimes charged here. As the Supreme Court has stated, "unless the text of the statute dictates a different result, the term 'knowingly' merely requires proof of knowledge of the facts that constitute the offense." *Dixon v. United States*, 548 U.S. 1, 5 (2006). "Knowingly" does not require knowledge that the facts underlying the criminal violation were unlawful. *See id*. (contrasting "knowingly" with "willfully," the latter of which "requires a defendant to have 'acted with knowledge that his conduct was unlawful'" (quoting *Bryan v. United States*, 524 U.S. 184, 193 (1998))). Thus, the Government needed only to establish that Honeycutt acted knowingly, not that he knew his conduct was illegal.

By raising the defense of entrapment by estoppel, Honeycutt was not asserting that he did not know he was distributing iodine, nor that he did not know or have reasonable cause to believe that the iodine would be used to manufacture methamphetamine, but that government

officials had led him to believe that such conduct was lawful. *See United States v. Triana*, 468 F.3d 308, 316 (6th Cir. 2006) (noting that the defense of entrapment by estoppel applies "when an official tells a defendant that certain conduct is legal and the defendant believes that official to his detriment") (citations omitted). Accordingly, the defense of entrapment by estoppel—like the defenses of necessity and duress—serves to "excuse conduct that would otherwise be punishable," yet "does not negate a defendant's criminal state of mind when the applicable offense requires a defendant to have acted knowingly." *Dixon*, 548 U.S. at 7 (citations omitted). And as with the defense of duress, entrapment by estoppel enables a defendant to "avoid liability" where "coercive conditions . . . negate[] a conclusion of guilt even though the necessary *mens rea* was present." *Id.* at 6–7.

Additionally, Honeycutt argues that the pattern instruction regarding entrapment by estoppel violates Due Process.[1] In particular, he focuses on the third and fourth prongs—the former, regarding reasonable reliance, and the latter concerning the unfairness of conviction for the crimes—although he has failed to show precisely how either factor is unconstitutionally burdensome.

Moreover, laying the third and fourth factors aside, Honeycutt was unable to prove that any federal agent affirmatively "announced that the charged criminal act was legal," much less that he reasonably relied on such an announcement. The agents did not tell him his distribution of iodine was legal; rather, they repeatedly warned him that his customers were buying iodine to manufacture methamphetamine.

In any event, given that his challenge to the district court's "refusal to give [his] specifically requested instruction is reviewed for abuse of discretion," and the "judgment may be reversed only if the instructions, viewed as a whole, were confusing, misleading, or prejudicial," *Fencorp*, 675 F.3d at 943 (quoting *Micrel*, 486 F.3d at 881), his shot at this instruction falls well short of the mark. The pattern instruction about entrapment by estoppel did not render the

---

[1]He also asserts that the pattern instruction is an inaccurate and/or anomalous statement of the law. However, insofar as he indicates that the fourth factor is unique to the Sixth Circuit, he is mistaken. *See, e.g.*, *United States v. Villafane-Jimenez*, 410 F.3d 74, 81 (1st Cir. 2005) (reciting essentially the same four-part test).

instructions, as a whole, "confusing, misleading, or prejudicial," and the district court did not abuse its discretion by declining to modify that instruction.

### E.          Deliberate Indifference Instruction

Next, Honeycutt challenges the district court's deliberate-ignorance instruction.  This instruction "is appropriately given when it addresses an issue reasonably raised by the evidence, i.e., when two predicates are met: '(1) the defendant claims a lack of guilty knowledge; and (2) the facts and evidence support an inference of deliberate ignorance.'"  6th Cir. Pattern Crim. Jury Instr. 2.09 Deliberate Ignorance Commentary (2013 ed.) (quoting *United States v. Mitchell*, 681 F.3d 867, 876 (6th Cir. 2012)).  "We have repeatedly held that this instruction is an accurate statement of the law." *Mitchell*, 681 F.3d at 876 n.51.

Honeycutt denied any guilty knowledge, and the evidence offered at trial clearly justified a deliberate-ignorance instruction.  Thus, the district court reasonably issued the instruction.  *See id.* at 877 (noting that "[b]oth parties had the right to have the case submitted to the jury under instructions that would allow a full and fair evaluation of the evidence of record in light of the theories proffered by each side").

The deliberate-ignorance instruction did not encourage the jury to convict Honeycutt on less than beyond a reasonable doubt.  *Id.* at 879.  Moreover, as we have previously held, "at worst, any error in giving the instruction was harmless," since "there is substantial evidence of actual knowledge,"  *Williams*, 612 F.3d at 508 (quoting *United States v. Mendoza-Medina*, 346 F.3d 121, 134 (5th Cir. 2003)), and given our conclusion that "a deliberate ignorance instruction that properly states the law is harmless error," *id.* (quoting *United States v. Rayborn*, 491 F.3d 513, 520 (6th Cir. 2007)).

### F.          Jury Finding of Iodine's Status as a List I Chemical

Honeycutt asserts that the specific listing of a chemical is an element of a § 841(c)(2) offense, because List I chemicals carry a higher statutory penalty; hence, he argues that the district court erred by not requiring the jury to determine whether iodine was, in fact, a List I chemical.  Given that he did not raise this issue below, it is reviewable only for plain error.

As an initial matter, Honeycutt's 60-month sentence does not run afoul of *Apprendi v. New Jersey*, 530 U.S. 466 (2000), since it did not exceed "the statutory maximum that would have applied even without the enhancing factor." *United States v. Osborne*, 673 F.3d 508, 512 (6th Cir. 2012) (quoting *United States v. Burns*, 298 F.3d 523, 544 (6th Cir. 2002)).

As to whether iodine's status as a List I chemical constitutes an element of a § 841(c)(2) offense, Honeycutt correctly notes that § 841(c)(2) establishes a twenty-year maximum penalty for a violation "involving a List I chemical" and a ten-year maximum for all other violations, and that "any fact that increases the penalty for a crime . . . must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. However, we need not decide whether he has identified a plain error, given that his substantial rights were clearly not affected. *See United States v. Stewart*, 306 F.3d 295, 317 (6th Cir. 2002) (finding it unnecessary to discuss the first three parts of the plain-error test because the fourth part had not been satisfied).

Even where a district court improperly withholds an element of an offense from the jury, however, the Supreme Court has held that the error is harmless if "a defendant did not, and apparently could not, bring forth facts contesting the omitted element." *Neder v. United States*, 527 U.S. 1, 6, 19 (1999).[2] Likewise, we have held that "where the evidence regarding the omitted element is undisputed, 'answering the question of whether the jury verdict would have been the same absent the error does not fundamentally undermine the purposes of the jury trial guarantee.'" *United States v. Kuehne*, 547 F.3d 667, 681 (6th Cir. 2008) (quoting *Neder*, 527 U.S. at 19). Here, each side offered evidence establishing that iodine is a List I chemical, and Honeycutt specifically elicited testimony that iodine has been thus classified since 2007.

Like *Neder,* this case is "one[] where a defendant did not, and apparently could not, bring forth facts contesting the omitted element," and the "omitted element is supported by uncontroverted evidence." 527 U.S. at 18–19. Therefore, the absence of a jury finding regarding

---

[2]Although *Neder* involved harmless error analysis under Rule 52(a), rather than plain error under Rule 52(b), that difference is immaterial because both standards require a showing that the error affected the defendant's substantial rights. *See United States v. Olano*, 507 U.S. 725, 734 (1993) (noting that the only difference between the two is that "[i]t is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice" under the plain-error standard).

iodine's status as a List I chemical did not affect Honeycutt's substantial rights, and the district court did not plainly err by not requiring the jury to make such a finding.

## IV.    Vagueness Challenge

Honeycutt also asserts that § 841(c)(2) is unconstitutionally vague.  We review challenges to the constitutionality of a statute de novo, and "every reasonable construction must be resorted to, in order to save a statute from unconstitutionality."  *United States v. Caseer*, 399 F.3d 828, 839 (6th Cir. 2005) (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1105 (6th Cir. 1995)).  With a vagueness claim, a defendant "bears the burden of establishing that the statute is vague as applied to his particular case, not merely that the statute could be construed as vague in some hypothetical situation."  *United States v. Kernell*, 667 F.3d 746, 750 (6th Cir. 2012) (quoting *United States v. Krumrei*, 258 F.3d 535, 537 (6th Cir. 2001)).

Honeycutt contends that, because list chemicals are not themselves controlled substances nor per se illegal, he may not be convicted without proof that he knew both that iodine is a listed chemical and that it appears on List I.  The district court rejected this argument, in particular because § 841(c) does not include a different knowledge requirement between List I and List II chemicals.

In support of his position, Honeycutt discusses at length our decision in *Caseer*, in which we held that, to satisfy the *mens rea* requirement of § 841(a) for an offense involving khat, the United States needed to prove the defendant knew that khat contained a controlled substance— since khat did not appear on the listed controlled substances schedules.  399 F.3d at 841.  Confronting and rejecting the argument that the statute was unconstitutionally vague, we explained that "the more important aspect of vagueness doctrine 'is not actual notice, but . . . the requirement that a legislature establish minimal guidelines to govern law enforcement,'" *id.* at 836 (quoting *Kolender v. Lawson*, 461 U.S. 352, 361 (1983)), and concluded that the "scienter requirement" of the statute overcame "the threat to due process posed by the failure of the controlled substances schedules to identify khat as a source of cathinone."  *Id.* at 830.

Unlike khat, iodine is specifically listed in the Controlled Substances Act and the Federal Register as a list chemical.  *See* 21 U.S.C. § 802(35); 72 Fed. Reg. 35920-01.  Further, *Caseer*'s

concerns about a person of "ordinary intelligence" who "could unwittingly expose himself . . . to criminal penalties," 399 F.3d at 839, does not apply to Honeycutt, as he clearly understood that iodine was a crucial ingredient for the methamphetamine manufacturing process.  Convictions under § 841(c)(2) require proof of "actual knowledge," which is an "unusually specific *mens rea* requirement," *United States v. Truong*, 425 F.3d 1282, 1288–91 (6th Cir. 2005), that serves to excuse the unwitting and convict the culpable.  Accordingly, Honeycutt has failed to prove that the statute was unconstitutionally vague as applied.

## V.      Honeycutt's Sentencing

### A.      The Iodine Quantity Attributed to Honeycutt

At sentencing, the district court determined Honeycutt's Guideline range based upon a finding that his offenses involved "1.3 KG or more of Iodine" and a "List I chemical."  Citing *United States v. Dado*, 759 F.3d 550, 570 (6th Cir. 2014), Honeycutt asserts that "drug quantity is an element of the offense in § 841," and argues that the jury should have made a specific finding regarding this element.  However, *Dado* involved § 841(b)(1)(A), under which drug quantity affects the statutory minimum and maximum and, thus, requires a jury finding under *Apprendi*.  In this case, the amount of iodine attributed to Honeycutt had no impact on the statutorily-authorized maximum penalty, so *Dado* is of no help to him.  The district court was authorized to determine the iodine quantity for which Honeycutt would be held responsible, and its determination was not clearly erroneous.  *See United States v. Samuels*, 308 F.3d 662, 670 (6th Cir. 2002) (reviewing drug quantity factual findings for clear error).  Moreover, "drug quantity need only be established by a preponderance of the evidence, and an estimate will suffice so long as it errs on the side of caution."  *United States v. Anderson*, 526 F.3d 319, 326 (6th Cir. 2008) (citing *United States v. Davis*, 981 F.2d 906, 911 (6th Cir. 1992)).

In the instant case, the evidence strongly supported the district court's analysis of the iodine quantity attributable to Honeycutt.  The store records indicated sales of more than 21,000 bottles of Polar Pure, each containing roughly eight grams of iodine crystals. Further, any quantity above 1.3 kilograms of iodine yields the same offense level of 30.  Since the record

establishes a quantity of iodine over 1.3 kilograms, the district court did not clearly err in its quantity determination.

### B.    Term in Excess of Statutory Maximum

Honeycutt asserts, and the Government concedes, that the district court's sentence of concurrent terms of 60 months' imprisonment for the three § 843(a)(6) violations exceeds the statutory maximum.  Given that § 843(a)(6) does in fact establish a maximum penalty of four years' imprisonment, we will vacate the sentence on those counts.  Even though Honeycutt's aggregate 60-month sentence remains unchanged in light of the § 841(c)(2) violations, we will remand this case to permit the district court to impose a sentence within the four-year maximum for the § 843(a)(6) counts.

## VI.    Forfeiture

In its cross-appeal, the Government asserts that the district court erred in refusing to order any forfeiture, given that the governing statute mandates the order of forfeiture if the requisite elements are satisfied.  We review a district court's interpretation of federal forfeiture law de novo, *United States v. Hill*, 167 F.3d 1055, 1073 n.13 (6th Cir. 1999), a district court's findings of fact for clear error, and the sufficiency of those facts de novo, *United States v. Jones*, 502 F.3d 388, 391 (6th Cir. 2007).

Section 853(a)(1) states that "[a]ny person convicted of a violation of this subchapter or subchapter II of this chapter . . . shall forfeit . . . any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as a result of such violation."  Although the district court properly noted that "the statute mandates that [the district court] order forfeiture if the proceeds were directly or indirectly derived from the criminal enterprise," *see* 28 U.S.C. § 2461(c); 21 U.S.C. § 853(a), it declined to order forfeiture for a number of reasons. In particular, it found that (1) although "there was a criminal conspiracy being operated out of the Brainerd Army Store . . . the Brainerd Army Store itself was [not] a criminal enterprise"; (2) "at least some of th[e] Polar Pure was sold for legal purposes . . . . [and] there is no evidence that would permit the Court to make a reasoned assessment of what percentage of that Polar Pure was due to illegal activity"; and (3) as "a salaried employee," the district court could not "say that

[Honeycutt] personally . . . profited from th[e] illegal conspiracy." Of these reasons, it appears that the district court's decision was driven mostly by its determination that Honeycutt did not directly or indirectly reap the proceeds of the criminal enterprise.

The Sixth Circuit has not yet squarely addressed the issue of whether joint and several liability applies to forfeiture of proceeds under 21 U.S.C. § 853. Although under another statute we have previously reversed a district court's forfeiture order based on insufficient proof that a defendant had received any proceeds from fraudulent activity, observing that "[i]t is well-established that a defendant 'cannot be ordered to forfeit profits that he never received or possessed,'" *United States v. McLaughlin*, 565 F. App'x 470, 475 (6th Cir. 2014) (quoting *United States v. Contorinis*, 692 F.3d 136, 145 (2d Cir. 2012)), we also recognized that "a defendant may 'forfeit proceeds received by others who participated jointly in the crime'—which is comparable to the possibility of forfeiting 'indirectly' obtained proceeds," *id.* (quoting *Contorinis*, 692 F.3d at 147). In fact, the lack of "an underlying conspiracy" in *McLaughlin* is one of the reasons that we distinguished that case from *United States v. Warshak*, 631 F.3d 266, 332 (6th Cir. 2010)—a case in which we invoked theories of corporate and accomplice liability to apply joint and several liability to forfeiture of revenue. 565 F. App'x at 475. Here, the conspiracy factor distinguishes *McLaughlin* from the instant case.

A number of other circuits that have addressed this issue have concluded that § 853 mandates joint and several liability among coconspirators for the proceeds of a drug conspiracy. *See, e.g.*, *United States v. Roberts*, 660 F.3d 149, 165 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1640 (2012) ("In the case of a narcotics conspiracy [under § 853(a)(1)], this mandatory liability [regarding forfeiture] is joint and several among all conspirators."); *United States v. Van Nguyen*, 602 F.3d 886, 904 (8th Cir. 2010) (holding that under § 853, a defendant "may be held jointly and severally liable for all of the foreseeable proceeds of the conspiracy"); *United States v. Pitt*, 193 F.3d 751, 765 (3d Cir. 1999) ("21 U.S.C. § 853(a)(1) imposes joint and several liability with respect to forfeiture."); *United States v. McHan*, 101 F.3d 1027, 1043 (4th Cir. 1996) (concluding that § 853(a)(1) "is not limited to property that the defendant acquired individually but includes all property that the defendant derived indirectly from those who acted in concert with him in furthering the criminal enterprise"), *cert. denied*, 520 U.S. 1281 (1997). On the other

hand, at least one circuit has held that § 853 does not countenance joint and several liability. *See United States v. Cano-Flores*, 796 F.3d 83, 90–95 (D.C. Cir. 2015) (criticizing the circuits that have invoked *Pinkerton v. United States*, 328 U.S. 640 (1946), to apply joint and several liability to § 853, and holding otherwise—based on the plain meaning of "obtained," the language of related Sentencing Guidelines passages, the rule of lenity, and the canon of constitutional avoidance). It is unnecessary to probe the reasoning of *Cano-Flores*, however, given that we are precedentially bound by our own reasoning as laid down in the RICO forfeiture context. *See McHan*, 101 F.3d at 1042 ("We generally construe the drug and RICO forfeiture statutes similarly.").

In *United States v. Corrado*, 227 F.3d 543 (6th Cir. 2000), we determined that "co-conspirators in a RICO enterprise should be held jointly and severally liable for any proceeds of the conspiracy." *Id.* at 553. Echoing the rationale of sister circuits that had so concluded, we held that "[t]he government is not required to prove the specific portion of proceeds for which each defendant is responsible. Such a requirement would allow defendants 'to mask the allocation of the proceeds to avoid forfeiting them altogether.'" *Id.* (quoting *United States v. Simmons*, 154 F.3d 765, 769-70 (8th Cir. 1998) (quoting *United States v. Caporale*, 806 F.2d 1487, 1508 (11th Cir. 1986))).

Although *Corrado* did not specifically concern § 853, the relevant language and structure of the two statute's forfeiture provisions are virtually identical: both contain the mandatory "shall forfeit" phrasing; both demand the forfeiture of "any property constituting, or derived from, any proceeds [that] the person obtained, directly or indirectly," as result of the violation; and both dictate that their provisions "shall be liberally construed to effectuate [their] purposes." *Compare* 21 U.S.C. § 853(a), (a)(1), (o), *with* 18 U.S.C. § 1963(a), (a)(3), *and* 18 U.S.C. § 3731. We find that our holding and rationale in *Corrado* carries equal weight in the § 853 context. Moreover, neither the district court's above-mentioned concerns nor Honeycutt's arguments militate otherwise. *See Warshak*, 631 F.3d at 332 ("[T]he argument that certain sales were legitimate gains no traction. Any money generated through these potentially legitimate sales is nonetheless subject to forfeiture, as the sales all resulted 'directly or indirectly' from [the] conspiracy."); *United States v. Darji*, 609 F. App'x 320, 321–22 (6th Cir. 2015) (upholding a

district court's application of joint and several liability for forfeiture of proceeds, even though a defendant "received only a reasonable salary"). And finally, and most importantly, "[e]ven if we were persuaded by [Honeycutt]'s argument and [the district court]'s rationale, we are bound by the [*Corrado*] decision," as "[i]t is firmly established that one panel of this court cannot overturn a decision of another panel; only the court sitting en banc can overturn such a decision." *United States v. Lanier*, 201 F.3d 842, 846 (6th Cir. 2000) (citing *United States v. Smith*, 73 F.3d 1414, 1418 (6th Cir. 1996)).[3] Accordingly, we conclude that the district court erred in declining to order forfeiture in this case.

## CONCLUSION

For the reasons stated above, we **AFFIRM** Honeycutt's § 841(c)(2) convictions, **VACATE** Honeycutt's sentences on the § 843(a)(6) convictions, **REVERSE** the district court's determination that forfeiture is not warranted, and **REMAND** the case to permit the district court to resentence Honeycutt on the § 843(a)(6) convictions and reconsider a forfeiture order consistent with this opinion.

---

[3]It is also worth noting that the D.C. Circuit's criticisms in *Cano-Flores*, 796 F.3d at 90–95—if valid— would apply with equal force to both the RICO and § 853 forfeiture provisions. And so, again, we would need to overrule *Corrado* if we were to follow *Cano-Flores*.

---

**CONCURRENCE**

---

KAREN NELSON MOORE, Circuit Judge, concurring in the judgment. I agree that Terry Honeycutt's convictions and his sentence should be affirmed, except insofar as we must vacate the sentences imposed for his § 843(a)(6) convictions as exceeding the applicable statutory maximum. I also agree that we must reverse the district court's refusal to order forfeiture, bound as we are by a decision of a prior panel of this court that a statute involving identical language to 21 U.S.C. § 853(a) allows the imposition of joint-and-several forfeiture liability. I write to emphasize why that prior panel was likely incorrect, and to suggest that the full court consider the issue en banc.

In declining to order forfeiture, the district court focused quite reasonably on the dearth of evidence regarding Honeycutt's financial motivations for participating in this conspiracy. Honeycutt's lack of ownership interest in the store and the absence of evidence describing what, if anything, Honeycutt himself gained from the sales of Polar Pure gave the district court pause. This concern would seem to flow directly from the forfeiture statute the district court was tasked with applying, which provides: "Any person convicted of a violation of this subchapter or subchapter II of this chapter punishable by imprisonment for more than one year shall forfeit to the United States, irrespective of any provision of State law—(1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation." 21 U.S.C. § 853(a). The government "must prove forfeiture by a preponderance of the evidence," *United States v. Warshak*, 631 F.3d 266, 331 (6th Cir. 2010) (quoting *United States v. Jones*, 502 F.3d 388, 391 (6th Cir. 2007)), so a lack of evidence suggesting that Honeycutt "obtained" anything would seem to be problematic.

As the majority explains, this seemingly clear statute has been interpreted otherwise. Although no published Sixth Circuit authority addresses the issue under 21 U.S.C. § 853(a), the forfeiture provision of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1963(a), contains *identical* language, and both provisions were enacted as part of the same law. *See* Comprehensive Forfeiture Act of 1984 §§ 302–303, Pub. L. No. 98-473, 98 Stat.

2040–45 (1984). We previously interpreted that provision of RICO to allow for the imposition of joint-and-several forfeiture liability, *United States v. Corrado*, 227 F.3d 543, 553 (6th Cir. 2000), and have since indicated in unpublished decisions that the same applies to § 853(a), *see, e.g., United States v. Darji*, 609 F. App'x 320, 331–32 (6th Cir. 2015); *United States v. Logan*, 542 F. App'x 484, 498–99 (6th Cir. 2013). Because I see no principled basis for distinguishing the two statutes, I agree with the majority that we are bound to follow *Corrado* and hold that joint-and-several liability is available under 21 U.S.C. § 853(a).

As the district court's concerns demonstrate, this holding seems to be contrary to the statute, which reaches only that property that a defendant "obtained." Although many circuits have held that § 853(a) allows for joint-and-several liability, Maj. Op. at 17–18, and many others have held the same under § 1963(a),[1] there has been surprisingly little explanation of the textual basis for such a rule. In *United States v. McHan*, 101 F.3d 1027 (4th Cir. 1996), the court determined that the statute's use of the phrase "obtained . . . indirectly" means that it applies to "all property that the defendant derived indirectly from those who acted in concert with him in furthering the criminal enterprise," *id.* at 1043, but joint-and-several liability reaches further than that. It would hold a defendant responsible for property he never had, so long as a co-defendant obtained the property. The same argument was made in a decision of the U.S. District Court for the Southern District of New York—which the Second Circuit adopted on appeal—but that decision also conflated property obtained indirectly by a defendant through a co-conspirator, with property obtained by a co-conspirator alone. *See United States v. Benevento*, 663 F. Supp. 1115, 1118 (S.D.N.Y. 1987), *aff'd*, 836 F.2d 129 (2d Cir. 1988). Other decisions, including our decision in *Corrado*, largely gloss over the statutory text.

Although no contrary authority existed when we decided *Corrado*, the D.C. Circuit has recently questioned the circuit consensus, emphasizing the plain language of § 853(a). *See United States v. Cano-Flores*, 796 F.3d 83 (D.C. Cir. 2015). The statute, the D.C. Circuit held, "appears, on its face, to embrace only property that a defendant has 'obtained,'" and using the

---

[1]*See United States v. Edwards*, 303 F.3d 606, 643 (5th Cir. 2002), *cert. denied*, 537 U.S. 1192 (2003); *United States v. Simmons*, 154 F.3d 765, 769–70 (8th Cir. 1998); *United States v. Hurley*, 63 F.3d 1, 22 (1st Cir. 1995), *cert. denied*, 517 U.S. 1105 (1996); *United States v. Masters*, 924 F.2d 1362, 1369 (7th Cir.), *cert. denied*, 500 U.S. 919 (1991); *United States v. Caporale*, 806 F.2d 1487, 1506–08 (11th Cir. 1986), *cert. denied*, 483 U.S. 1021 (1987).

term "indirectly" to impose co-conspirator liability "reads the word 'obtained' out of the statute." *Id.* at 91. Simply put, "[i]n ordinary English a person cannot be said to have 'obtained' an item of property merely because *someone else* (even someone else in cahoots with the defendant) foreseeably obtained it." *Id.* The D.C. Circuit's textual argument is more thorough than any conducted by the many circuits that hold that joint-and-several liability is available, and it persuades me that we should reconsider *Corrado*.

I find that the other reasons given by courts for applying joint-and-several liability are likely to be equally inadequate. Many rely on a *Pinkerton v. United States*, 328 U.S. 640 (1946), theory that a conspirator is liable for the reasonably foreseeable actions of co-conspirators, *Simmons*, 154 F.3d at 770; *McHan*, 101 F.3d at 1043; *Hurley*, 63 F.3d at 22; *Caporale*, 806 F.2d at 1508, but the *Pinkerton* doctrine "speaks only to a defendant's substantive liability—not to the consequences of such liability," *Cano-Flores*, 796 F.3d at 94, making it an especially thin basis for overruling the statute's plain text. Nor is the general rule that §§ 853(a) and 1963(a) should be construed broadly, *United States v. Russello*, 464 U.S. 16, 26–29 (1983); 21 U.S.C. § 853(o), a sufficient reason to override their plain language, contrary to the suggestions of *McHan*, 101 F.3d at 1043, and *Caporale*, 806 F.2d at 1507. In any event, "even if the statute were ambiguous in the sense of *permitting* the government's construction, '[t]he rule of lenity requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them.'" *Cano-Flores*, 796 F.3d at 93–94 (quoting *United States v. Santos*, 553 U.S. 507, 514 (2008)).

I am sensitive to concerns that precluding joint-and-several liability may frustrate the government's ability to collect illicit proceeds, either due to the Eighth Circuit's concern that it might "allow defendants to mask the allocation of the proceeds," *Simmons*, 154 F.3d at 770 (internal quotation marks omitted), or the First Circuit's warning that "[i]f conclusive weight were given to who physically handled the money, a low-level courier or money counter could be liable for vast sums, while other higher level conspirators could easily escape responsibility," *Hurley*, 63 F.3d at 22, but I am not convinced that the absence of joint-and-several liability would frustrate collections as much as these decisions anticipate. Moreover, the First Circuit's concern ignores the ways in which property may be "indirectly obtained" by a higher-level conspirator, who may not possess it, but who ultimately controls it and reaps the financial

benefits of the illegal operation.  *See Cano-Flores*, 796 F.3d at 92.  In any event, in the absence of a statutory basis for requiring the imposition of joint-and-several liability, it would seem to be Congress's job to provide an expanded mechanism for obtaining forfeiture.

In light of my concerns regarding the correctness of our decision in *Corrado*, I believe en banc consideration is appropriate to consider whether *Corrado* should be overturned.